**The STATE of Ohio, Appellee,**

**v.**

**WILLIAMS, Appellant.**

[Cite as *State v. Williams* (1991), 74 Ohio App.3d 686.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 58782.

Decided July 1, 1991.

688

*Stephanie Tubbs Jones*, Prosecuting Attorney, and *Karen L. Johnson*, Assistant Prosecuting Attorney, for appellee.

*Scott Z. Jelen and Pamela A. Conger*, Assistant State Public Defenders, for appellant.

NAHRA, Presiding Judge.

The petitioner-appellant, Lewis Williams, appeals the trial court's dismissal of his petition for post-conviction relief.

On October 7, 1983, Williams was tried in the Cuyahoga County Court of Common Pleas and found guilty by a jury on one count of aggravated murder in violation of R.C. 2903.01, and the accompanying specification under R.C. 2929.04(A)(7) of having committed the aggravated murder in the course of committing aggravated robbery. The jury also found Williams guilty of aggravated robbery under R.C. 2911.01 as well as the firearm specification contained in R.C. 2929.71.

On October 16, 1983, the jury recommended that Williams be sentenced to death. On November 16, 1983, the trial court accepted the jury's recommendation and sentenced Williams to death. The convictions and sentence were affirmed by this court. *State v. Williams* (Oct. 25, 1984), Cuyahoga App. No.

47853, unreported, 1984 WL 5289. The convictions and sentence were also affirmed by the Ohio Supreme Court. *State v. Williams* (1986), 23 Ohio St.3d 16, 23 OBR 13, 490 N.E.2d 906. Williams was denied certiorari to the United States Supreme Court.

On April 4, 1986 and June 27, 1986, Williams filed *pro se* petitions for post-conviction relief which were denied.

On November 20, 1987, Williams, through counsel, filed a petition for post-conviction relief in the Cuyahoga County Court of Common Pleas. In October 1989, the trial court filed its findings of fact and conclusions of law, denying Williams' petition for post-conviction relief. No evidentiary hearing was held. Williams filed a timely notice of appeal.

The Supreme Court of Ohio summarized the relevant facts as follows:

"On January 21, 1983, the body of Leoma Chmielewski, a seventy-six-year-old woman, was discovered lying face down on the floor of her home. An autopsy revealed that the decedent had suffered multiple blunt force injuries to the head and neck, as well as a single gunshot wound fired from close range (approximately two feet or less) into the victim's face.

"Witnesses established that the decedent was last seen between 10:00 and 10:30 p.m. the evening of the 20th, standing in her doorway talking with appellant, Lewis Williams. Between 10:30 and 11:00, the victim's neighbors heard a sound from her house like a door slamming. Appellant was arrested on January 22, 1983 and admitted being in the house the night of the murder, but denied perpetrating the offenses for which he was indicted.

"The evidence produced at appellant's trial established the following sequence of events. Early in the evening of January 20, 1983, appellant and two acquaintances, Brent Nicholson and Tyrone Robinson, visited and had dinner with appellant's cousin, Kevin Samuels. Samuels lives across the street from the victim's house and had known her for several years. Prior to the night of the incident in question, appellant had stayed with Samuels and had known the victim.

"On the evening of the 20th, Robinson and appellant left the Samuels residence, at approximately 9:00 p.m., to go to the store. Only Robinson returned a half-hour later, indicating appellant was still at the store. At trial, however, Robinson testified that appellant was in fact at Chmielewski's house, where he had apparently been invited in. The remarks to the contrary were merely to dissuade appellant's brother, Mark, who had arrived at the Samuels residence, from looking for appellant. Robinson eventually told Mark where appellant was, and the two of them went over to Chmielewski's house where Mark prevailed upon his brother to return some money. Mark left and

Robinson went back to Samuels' house. Samuels sent Robinson back over to ask appellant to return to the Samuels residence. Appellant's responses were to tell Robinson he was not ready to leave and to call Samuels and tell him to mind his own business.

"Samuels, Nicholson, and Robinson were driving down the Samuels driveway around 10:30 p.m. when Samuels saw appellant and Chmielewski at her door. They honked the horn, but appellant motioned for the car to proceed without him. When Nicholson and Samuels returned, a little over an hour later, Nicholson went across the street to find that the door was open and Chmielewski's body was on the floor. Nicholson returned to the Samuels residence, whereupon Samuels called appellant's mother's home, then the police.

"When the police arrived, at approximately 1:00 a.m., January 21, 1983, they found not only the body, but also several coins scattered near the doorway, numerous bank envelopes throughout the house and down to the street corner, decedent's purse with its contents emptied on the bedroom closet shelf, decedent's false teeth on the floor next to the body, and the phone off the hook. A subsequent police investigation revealed an imprint on the hem of the nightgown decedent was wearing which matched a portion of a shoe appellant was wearing the day of his arrest. Appellant's jacket sleeve cuff also contained a trace of lead powder.

"In addition to the above evidence, the state presented two witnesses who were former cellmates of appellant while he was confined to the Cuyahoga County Jail pending trial. Michael Anderson and Navarro Brooks each testified that appellant had told them he had murdered the decedent. Specifically, Anderson testified that appellant had said he 'stuck the gun in her mouth' to get her 'to shut up.' Brooks testified that appellant was worried about blood on his shoes apparently from rolling decedent's body over with his foot. After this testimony, the state rested, as did the appellant, without presenting any evidence." *State v. Williams*, 23 Ohio St.3d at 17, 23 OBR at 14–15, 490 N.E.2d at 908–909.

## I

Appellant's first assignment of error states:

"The trial court erred in summarily dismissing appellant Williams' post-conviction petition without according him an evidentiary hearing."

Williams contends that the trial court should have granted him an evidentiary hearing on his petition for post-conviction relief for the following reasons:

(1) he raised constitutional errors outside the record, (2) the trial court used the wrong legal standard to determine whether the alleged ineffective assistance of counsel was prejudicial, and (3) the trial court did not have the transcript before it when it dismissed his petition.

R.C. 2953.21 states in part:

"(A) Any person convicted of a criminal offense or adjudged delinquent claiming that there was such a denial or infringement of his rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, may file a petition at any time in the court which imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file such supporting affidavit and the other documentary evidence as will support his claim for relief.

" * * *

"(C) Before granting a hearing, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. Such court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal."

In *State v. Jackson* (1980), 64 Ohio St.2d 107, 111, 18 O.O.3d 348, 350–351, 413 N.E.2d 819, 822–823, the Supreme Court of Ohio stated:

"Before a hearing is granted, the petitioner bears the initial burden in a post-conviction proceeding to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and also that the defense was prejudiced by counsel's ineffectiveness.

"Broad assertions without a further demonstration of prejudice do not warrant a hearing for all post-conviction petitions. General conclusory allegations to the effect that a defendant has been denied ineffective assistance of counsel are inadequate as a matter of law to impose an evidentiary hearing."

Generally, the petitioner satisfies his initial burden by submitting evidence of matters outside the record concerning ineffective assistance of counsel. Such presentation of evidentiary documents is sufficient, if not to mandate a hearing, at least to avoid dismissal on the basis of *res judicata*. *State v. Cole* (1982), 2 Ohio St.3d 112, 114, 2 OBR 661, 663–664, 443 N.E.2d 169, 171–172. However, in his petition for post-conviction relief, Williams submitted a mass

of affidavits and exhibits which were received by the trial court. As stated by the trial court in its detailed findings of fact and conclusions of law, such evidentiary materials did not form a basis for any substantive grounds for relief.[1]

Our review indicates that Williams' petition did not provide substantive grounds for relief and that he was not entitled to an evidentiary hearing in view of the overwhelming evidence in the record of trial counsel's competence.

█ Williams also asserts that the trial court applied the incorrect standard in dismissing his claim of ineffective assistance of counsel at the mitigation phase. He contends that the trial court applied an outcome-determinative test in ruling that he was not prejudiced by trial counsel's failure to adduce mitigating evidence contained in the post-conviction petition.

In its findings of fact and conclusions of law, the trial court stated:

"With his Petition and Amended Petition to Vacate or Set Aside Sentence, defendant-petitioner has submitted numerous affidavits by family members, friends, and professionals. These affidavits do present a more complete psycho-social history of defendant-petitioner. They do not, however, present mitigating evidence that would have altered the outcome of the penalty phase. That defendant-petitioner's father was homosexual, that defendant-petitioner is good at artwork, that one of defendant-petitioner's friends killed one of defendant-petitioner's cousins, that defendant-petitioner is an emotionally dependent man who compensates for his chronic feelings of unworthiness by adopting the attitude of a ladies' man and protector, that defendant-petitioner's mother was passive, that defendant-petitioner never thanked his sister for an expensive robe she gave him while he was in prison, etc. do not lessen the moral culpability of defendant-petitioner or diminish the appropriateness of the death penalty. *See, State v. Steffan [Steffen]* (1987), 31 Ohio St.3d 111 [31 OBR 273, 509 N.E.2d 383]. This is simply more of the same type of evidence which the Ohio Supreme Court already held does not mitigate the aggravating circumstance of a 'senselessly cruel aggravated murder in the course of an aggravated robbery.' *Williams, supra,* [23 Ohio St.3d] at 24 [23 OBR at 20–21, 490 N.E.2d at 914].

"The defense, therefore, was not prejudiced by the absence of this evidence and defendant-petitioner was not denied effective assistance of counsel in the penalty phase of his trial."

---

1. We recognize that *res judicata* does not bar Williams from raising the claim of ineffective assistance of counsel in his petition for post-conviction relief insofar as he was represented on direct appeal by the same counsel that represented him at trial. *State v. Carter* (C.P.1973), 36 Ohio Misc. 170, 65 O.O.2d 276, 304 N.E.2d 415.

We find that the trial court's determination that Williams' affidavits were cumulative and immaterial complied with the test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. The trial court enunciated the *Strickland* standard in its findings of facts and conclusions of law:

"In order to show ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that counsel's errors were so serious that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the trial court would have been different."

Our review of the findings of facts and conclusions of law below reveals that the trial court applied the correct test for prejudice under *Strickland.*

 Williams also asserts that the trial court improperly dismissed his petition without reviewing the trial transcript. However, there is nothing in the record to indicate that the trial court did not have the transcript before it when ruling on Williams' petition. In the absence of some demonstrated error, we presume the regularity of the proceedings below. *State v. Edwards* (1987), 31 Ohio App.3d 114, 31 OBR 200, 508 N.E.2d 1046. Moreover, a trial court need not consider a transcript of earlier proceedings before ruling on a post-conviction relief petition. *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500; see *State v. Steele* (Feb. 14, 1985), Cuyahoga App. No. 48583, unreported, 1985 WL 6617.

As a result of the foregoing, Williams' first assignment of error is overruled.

## II

Appellant's second assignment of error states:

"Appellant Williams was denied the effective assistance of counsel at the mitigation phase of his capital trial in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 9, 10 and 16, Article I of the Ohio Constitution."

 To prevail on a claim of ineffective assistance of counsel, a defendant must show that there was a substantial violation of any of defense counsel's essential duties to his client and, second, that he was materially prejudiced by counsel's ineffectiveness. *State v. Lytle* (1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 497–498, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154; *Strickland v. Washington, supra.*

Williams presents a panoply of claims that he received ineffective assistance of counsel at the mitigation phase of his trial. None of these claims has merit.

■ Williams asserts that his trial counsel failed to investigate thoroughly defendant's background and that counsel should have presented the testimony of various family members, friends and professionals for purposes of mitigation.

It is the obligation of counsel to make reasonable investigations or to make a reasonable decision that makes specific investigations unnecessary. A particular decision not to investigate must be examined for reasonableness under the circumstances with strong measures of deference to counsel's judgments. See *Strickland v. Washington, supra,* 466 U.S. at 691, 104 S.Ct. at 2066–2067, 80 L.Ed.2d at 695–696. The failure of trial counsel to call a witness is a decision concerning trial strategy, and, absent a showing of prejudice, such failure does not deprive a defendant of effective assistance of counsel. *State v. Reese* (1982), 8 Ohio App.3d 202, 8 OBR 273, 456 N.E.2d 1253; see *State v. Hunt* (1984), 20 Ohio App.3d 310, 20 OBR 411, 486 N.E.2d 108. In reviewing a claim of ineffective assistance of counsel, courts should decline second-guessing an attorney's trial strategy. *State v. Hester* (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304.

Here, Williams presented a variety of witnesses in the penalty phase. Olivia Packnett, the mother of one of Williams' friends, testified that Williams has always been well-behaved and respectful at home. Debra Williams, defendant's sister, testified about the instability of defendant's home life. Lewis Williams, Sr., defendant's father, testified that he did not spend much time with defendant and that defendant's mother rejected him. Defendant himself proferred unsworn testimony of his criminal conduct that started at the age of nine which was designed to get his family's attention. He stated that he was blamed for all of the family's problems and spoke up about his troubled relationship with his mother.

In his petition for post-conviction relief, Williams submitted a mass of affidavits. Such affidavits, however, add only additional detail to support his original mitigation theory: that he pursued a life of crime to compensate for a troubled childhood. *State v. Williams,* 23 Ohio St.3d at 24, 23 OBR at 20–21, 490 N.E.2d at 914. Such evidence does not demonstrate the diminished responsibility that the legislature considered to be mitigating. *Id.;* R.C. 2929.04(B); *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383. Therefore, we do not believe that counsel's performance was deficient by failing to present certain evidence during the mitigation phase of the trial.

The absence of such testimony did not prejudice Williams so as to render the result unreliable.

■ Williams also contends that trial counsel was ineffective when counsel failed to object to the firearm specification in the indictment, guilt phase and mitigation phase. Williams relies on *State v. Johnson* (1986), 24 Ohio St.3d 87, 24 OBR 282, 494 N.E.2d 1061, which held that a gun specification may not be considered as an aggravating circumstance enumerated in R.C. 2929.04(A). However, *Johnson* did not hold that a gun specification is impermissible in a capital case or that no reference may be made to a gun specification in a capital trial. We believe that Williams' complaints with respect to references to "specification" during voir dire as well as during the prosecutor's opening and closing statements of the guilt phase lack merit.

We also note that *Johnson* was decided in 1986 while the trial and conviction of Williams took place in 1983. With respect to the inclusion of the gun specification in the sentencing verdict form that Williams contends was improper under *Johnson,* we note that Williams' counsel had no duty to anticipate a change in the law. *Engle v. Isaac* (1982), 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783; *Alvord v. Wainwright* (C.A. 11, 1984), 725 F.2d 1282; *Poole v. United States* (C.A. 11, 1987), 832 F.2d 561; *Brunson v. Higgins* (C.A. 8, 1983), 708 F.2d 1353, 1356. In view of *Johnson* not having been decided at the time of Williams' trial, we do not believe that trial counsel's failure to object to the gun specification in the sentencing verdict form fell below an objective standard of reasonableness. Moreover, we note that there is no indication in the record that Williams was prejudiced by the inclusion of the gun specification on the sentencing verdict form. The state did not argue that the use of a firearm constituted an aggravating circumstance. In addition, the trial court instructed the jury correctly with respect to the mitigation of sentence. In such instruction, the trial court did not refer to the gun specification. We also note that *Johnson* is distinguishable from the case at bar, insofar as in *Johnson* there was no mitigation evidence presented by counsel on behalf of defendant, whereas, here, counsel did present mitigation evidence on behalf of Williams.

As a result of the foregoing, we do not believe that counsel's failure to object to the gun specification on the sentencing verdict form constituted ineffective assistance of counsel.

■ Williams also maintains that his trial counsel was ineffective because counsel failed to object to the inclusion of the victim impact statement in the pre-sentence report. Williams relies on *Booth v. Maryland* (1987), 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440, in support of his proposition. In *Booth,* the United States Supreme Court invalidated a provision in a Maryland statute

which required consideration of a victim impact statement during sentencing proceedings, holding that the introduction of such evidence during the sentencing phase of a capital murder trial violates the Eighth Amendment to the United States Constitution.

First we note that *Booth* was decided in 1987 and Williams' trial was in 1983. As a result, counsel's performance could not be deficient for failing to anticipate a change in the law and failing to object to the victim impact statement. Moreover, in the instant case, the victim impact statement did not prejudice the defense. It stated:

"Mr. Jack Swinger of 10340 Page Road, Streetsboro, Ohio, Phone No. 1–626–3308, is son and next of kin to the victim in this case. Mr. Swinger has not been available for comment despite numerous attempts to reach him. A victim impact statement has been sent to his home address. According to prosecutor, Tom Sammon, the Swingers were in Court every day of the trial and are extremely interested in the outcome of this case. They would naturally like to see that justice is served."

The victim impact statement in *Booth,* unlike the one here, was lengthy, detailed and inflammatory insofar as it described the shock, rage, fear, and depression of the victim's family and recalled how family members were reminded of the victim's death in daily life. In view of the brevity of the victim impact statement here and its absence of detail, we do not believe that there was a reasonable possibility that, had it been excluded, Williams would not have been sentenced to death. Therefore, we do not believe that Williams' counsel was ineffective in consideration of the victim impact statement.

Williams further contends that counsel was ineffective by ordering a pre-sentence investigation which detailed Williams' extensive record and which was required to go to the jury.

The decision to request a pre-sentence report is one of sound trial strategy. *State v. Esparza* (1988), 39 Ohio St.3d 8, 529 N.E.2d 192. Such trial strategy should not be second-guessed by reviewing courts in a claim of ineffective assistance of counsel. See *Strickland v. Washington, supra.*

Williams argues that counsel was ineffective for failing to object to various improper comments by the prosecution during closing arguments. Our review of the record reveals that the prosecutor's comments were proper and that trial counsel's performance was not deficient for failure to object to such comments. *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883; *State v. Broom* (1988), 40 Ohio St.3d 277, 293, 533 N.E.2d 682, 699–700.

Williams further asserts that he was denied effective assistance of counsel because counsel failed to object to various instructions to the jury.

Our review of the charge to the jury reveals that the instructions accurately reflected the law at the time they were given. See *Blystone v. Pennsylvania* (1990), 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255.

Williams contends that counsel should have objected to an instruction to the jury that they not be influenced by consideration of sympathy or prejudice. This issue of the anti-sympathy instruction was raised and rejected on appeal and thus consideration of it is barred under the doctrine of *res judicata.* *State v. Williams,* 23 Ohio St.3d at 22, 23 OBR at 18–19, 490 N.E.2d at 912– 913; see *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph three of the syllabus. Likewise, the instruction with respect to the death verdict as only being a recommendation by the jury and not binding on the court was also challenged and upheld on appeal. See *State v. Williams,* 23 Ohio St.3d at 29–30, 23 OBR at 24–26, 490 N.E.2d at 917–919. The definition of reasonable doubt as a jury instruction was contested and affirmed on appeal as well. *State v. Williams, supra,* unreported.

Inasmuch as there were no errors in the jury instructions, Williams was not prejudiced by counsel's failure to object thereto. Therefore, Williams received effective assistance of counsel with respect to the jury instruction in the penalty phase.

Accordingly, appellant's assignment of error is overruled.

### III

Appellant's third assignment of error states:

"The trial court erred in its ruling that appellant Williams received effective assistance of counsel at the guilt-innocence phase of his trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution."

██ Trial counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and that prejudice arises from counsel's performance. *Strickland v. Washington, supra; State v. Lytle, supra.* In order to show that a defendant has been prejudiced by trial counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the results of the trial would have been different. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

Williams claims he received ineffective assistance of counsel on a variety of grounds. None of these claims has merit.

██ Williams argues that he received ineffective assistance of counsel because his counsel at trial failed to request a continuance to investigate

witnesses Anderson and Brooks. At the same time, Williams also admits in his brief that "a continuance in mid-trial would not have been satisfactory." If a continuance would not have been "satisfactory," we do not believe that the defendant could have been prejudiced by counsel's failure to request one. Even assuming *arguendo* that defense counsel had requested a continuance and then obtained evidence by which Anderson and Brooks could be impeached, we do not believe that there is a reasonable probability that the outcome of the trial would have been different. Even if Anderson and Brooks had been impeached, our review of the record indicates that there was sufficient evidence to support Williams' conviction. The record reveals: that Williams was at the victim's home two hours before her body was discovered, that a shoe print on the hem of the victim's nightgown matched a shoe Williams was wearing the day of the murder, and that lead traces were found in Williams' cuff along with scattered coins and bank envelopes scattered throughout the house and down to the street corner. The errors claimed by Williams did not prejudice him in view of the vast quantity of evidence in the record supporting his conviction.

Williams also claims that he received ineffective assistance of counsel because his trial counsel failed to file a motion to suppress Williams' statements to Anderson and Brooks. The record reveals that Williams' counsel did file a motion to suppress such statements and that such motion was argued vigorously by trial counsel. Williams' claim that his counsel was deficient here lacks merit.

Williams claims that he received ineffective assistance of counsel because counsel never developed a meaningful attorney-client relationship with him. In support of his claim, Williams presents his own self-serving statement of his doubts and suspicions of his attorneys. Such statements are insufficient to warrant an evidentiary hearing. *State v. Kapper* (1983), 5 Ohio St.3d 36, 5 OBR 94, 448 N.E.2d 823, certiorari denied (1983), 464 U.S. 856, 104 S.Ct. 174, 78 L.Ed.2d 157; *State v. Jackson* (1980), 64 Ohio St.2d 107, 18 O.O.3d 348, 413 N.E.2d 819. Counsel stated in the record that he spent "hours upon hours upon hours" counselling Williams on the issue of a plea bargain and that going ahead with the defense of not guilty by reason of insanity was at Williams' own insistence. Our review of the record as a whole indicates that counsel fully counselled Williams.

Williams also claims that his counsel rendered ineffective assistance because of their improper handling of his defense of not guilty by reason of insanity. The record reveals that such defense was pursued at Williams' insistence and against counsel's advice. Counsel attempted to obtain a second court-ordered psychiatric evaluation after Williams refused to cooperate with

the first evaluation. We do not believe that counsel's performance with respect to presenting this defense fell below an objective standard of reasonableness. In addition, there is not a reasonable probability that the outcome of the trial would have been different had the defense been handled better in view of the vast quantity of evidence by which Williams was convicted.

■ Williams further contends that he received ineffective assistance of counsel because counsel refused to let him testify at trial. In support of his claim, Williams presents only his own self-serving statements. Williams acknowledged specifically at trial that he did not want to testify. We believe that the trial court's dismissal of this claim without an evidentiary hearing was proper insofar as Williams' statements do not contain sufficient operative facts to demonstrate that he did not receive effective assistance of counsel. *Id.*

■ Williams also maintains that he received ineffective assistance of counsel because counsel waived opening argument. The decision not to make an opening statement is viewed as a tactical decision to which a reviewing court must be highly deferential. *Strickland v. Washington, supra; State v. Bradley,* 42 Ohio St.3d at 144, 538 N.E.2d at 381–382. Moreover, Williams fails to demonstrate how this decision prejudiced his defense.

Accordingly, appellant's assignment of error is overruled.

## IV

Appellant's fourth assignment of error states:

"The trial court erred by failing to find that (1) the admission of anticipatory rebuttal evidence; (2) prosecutor argument; and, (3) jury instructions concerning the NGRI plea violated appellant Williams' rights of due process, fair trial, and right against cruel and unusual punishment as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 9, 10 and 16, Article I of the Ohio Constitution."

Williams alleges a variety of errors with respect to the defense of not guilty by reason of insanity. However, any such errors related thereto were waived by Williams' failure to present such claims in his petition for post-conviction relief. See *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277. Moreover, the doctrine of *res judicata* bars consideration of these alleged errors in a petition for post-conviction relief inasmuch as they are errors which occur on the record and could have been raised on appeal. *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104.

Accordingly, appellant's fourth assignment of error is overruled.

## V

Appellant's fifth assignment of error states:

"Mr. Williams' statements to state's witnesses Anderson and Brooks were admitted in violation of his right to counsel."

Williams contends that he was denied his right to counsel inasmuch as he made incriminating statements to cellmates Brooks and Anderson prior to trial. However, this claim was not included in Williams' petition for post-conviction relief and thus was not presented to the trial court. As a result, any error related thereto was waived. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364; see *State v. Awan*, 22 Ohio St.3d at 122, 22 OBR at 201–202, 489 N.E.2d at 278–279. Notwithstanding such waiver, there is nothing in the record to indicate that the state sought to elicit an admission from Williams or that he was deprived of his right to counsel. Rather, the testimony of Anderson and Brooks reveals that Williams freely admitted the murder to them during conversation between the inmates. *Kuhlman v. Wilson* (1986), 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364. The affidavit of another cellmate at the time, Gary English, stated that law enforcement officers were looking for assistance from inmates in obtaining information from Williams. English claimed that Anderson and Brooks talked to police; however, English did not claim that such conversations took place prior to Williams' admissions. As a result, we do not believe that Williams established substantive grounds that his admissions to Anderson or Brooks were deliberately elicited by the state or that he was denied his right to counsel.

Accordingly, appellant's assignment of error is overruled.

## VI

Appellant's sixth assignment of error states:

"The trial court erred to the prejudice of Mr. Williams by finding that granting the state's motion for protective order did not violate Mr. Williams' right of confrontation."

Williams asserts that the trial court erred by granting the state's motion for a protective order pursuant to Crim.R. 16(B)(1)(e) with respect to the identities of witnesses Anderson and Brooks. This claim was raised and rejected on direct appeal. The doctrine of *res judicata* bars this issue from being raised in a post-conviction relief petition and proceeding. *State v. Perry, supra.*

Therefore, appellant's assignment of error is overruled.

## VII

Appellant's seventh assignment of error states:

"The trial court erred to Mr. Williams' prejudice by finding that the admission of gruesome and cumulative photographic evidence did not render his conviction and sentence void or voidable."

Williams argues that the trial court erred in denying his petition for post-conviction relief when it found that the conduct of Williams' counsel at trial was not deficient in failing to object to the admission of photographs into evidence. At trial, defense counsel did not object to the admission of photographs of the victim taken at the coroner's office prior to autopsy. On direct appeal to this court, we found that the photographs in question were admitted into evidence properly by the trial court. In its findings of fact and conclusions of law in response to Williams' petition for post-conviction relief, the trial court found that the coroner's photographs were properly admitted and that they were not repetitive or cumulative in number. See *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, paragraph seven of the syllabus, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 728. We believe that counsel's decision not to object to the admission of such photographs did not constitute deficient conduct in view of our prior holding that the photographs were properly admitted. *State v. Perry, supra; Strickland v. Washington, supra.*

Appellant's assignment of error is overruled.

## VIII

Appellant's eighth assignment of error states:

"Appellant Williams was denied the effective assistance of counsel on his direct appeals in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 9, 10 and 16, Article I of the Ohio Constitution."

Williams asserts that his post-conviction relief petition was dismissed improperly because he was denied effective assistance of appellate counsel.

The courts in Ohio are divided with respect to the application of R.C. 2953.21 post-conviction relief motions to claims of ineffective assistance of appellate counsel. In *State v. Howard* (1989), 42 Ohio St.3d 18, 537 N.E.2d 188, certiorari denied (1989), 493 U.S. 873, 110 S.Ct. 203, 107 L.Ed.2d 157, the Ohio Supreme Court, *in dicta,* alluded to this issue. While *Howard* raises the possibility that claims of ineffective assistance of appellate counsel should be considered under R.C. 2953.21, we are bound by the decisions of this court which have found that post-conviction relief is not the proper remedy. *State*

*v. Mitchell* (1953), 53 Ohio App.3d 117, 559 N.E.2d 1370; *State v. Apanovitch* (1991), 70 Ohio App.3d 758, 591 N.E.2d 1374; *State v. Anderson* (June 15, 1989), Cuyahoga App. No. 55504, unreported, 1989 WL 65673.

Appellant's assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

JOHN F. CORRIGAN and ANN MCMANAMON, JJ., concur.