DECISION.
Appellant Angelo Fears was sentenced to death for the murder of Antwuan Gilliam. The murder occurred after Fears and his cohort, James Grant, entered the apartment of Lakesha Bryant uninvited. Derrick Frazier and Steven Franklin were inside negotiating the purchase of crack cocaine. Gilliam had entered immediately before Fears and Grant. Fears and Grant pointed guns at the men, and Franklin and Gilliam dropped to the floor. They robbed the men of money and jewelry.
Fears stuck a gun in Gilliam's buttocks and threatened to shoot him. Grant told Fears, who was by then holding two guns, to shoot one of the men other than Gilliam. Contrary to Grant's instruction, Fears indicated that he wanted to shoot Gilliam. While Gilliam pleaded for his life, Fears cocked one of the guns and put a bullet through Gilliam's left temple. After Grant obtained Frazier's supply of cocaine from a safe in Bryant's bedroom, Fears and Grant left. Grant was arrested the day of the shooting. Fears was arrested approximately two weeks later.
Fears and Grant were charged with four counts of aggravated murder with death-penalty specifications, including a kidnapping and an aggravated robbery specification, attached to each count, one count of aggravated burglary, three counts of aggravated robbery, and four counts of kidnapping. Firearm specifications were attached to each of the twelve counts. The men were tried and convicted separately.
A jury found Fears guilty as charged. After the penalty phase of the trial, the jury recommended the death penalty. The trial court adopted that recommendation and sentenced Fears to death on the aggravated murder counts, merging the counts and their attached specifications for sentencing purposes. It also imposed concurrent ten-year sentences on the each of the remaining counts, which were consecutive to the death sentence and the additional three-year consecutive sentences on the attached firearm specifications, which it merged for purposes of sentencing.
Fears filed a direct appeal to the Ohio Supreme Court, which affirmed the trial court's judgment with the exception that it merged the kidnapping specification into the aggravated robbery specification.[1] Before the Ohio Supreme Court's released its decision, Fears filed a postconviction petition to vacate or set aside the judgment with the trial court. The trial court denied the postconviction petition without an evidentiary hearing. It is this judgment that Fears now appeals.
 I. The Indictment
Before discussing the issues Fears raises in his appeal, we feel compelled to address an issue discovered during our review of the record and brought to the parties' attention for supplemental argument. According to the record, Fears was found guilty and convicted of specifications for which he had not been indicted. (The numerical designation of the specifications in the verdict forms and the trial court's sentencing entry was not consistent with the designation in the indictment.) Fears and Grant were indicted jointly. Each of the first four counts contained in the indictment had ten attached specifications. Grant was indicted on the specifications designated one through five attached to each count, and Fears was indicted on the specifications designated six through ten. The remaining eight counts each had four attached specifications. Grant was indicted on the specifications designated one and two in each count, and Fears was indicted on the specifications designated three and four. Although the substance of the specifications was identical for each defendant, Fears was charged with certain enumerated specifications, and Grant was charged with other enumerated specifications.
During Fears's trial, the court instructed the jury on what it was required to find on the first, second, third, fourth, and fifth specifications to the first four counts, and on specifications one and two to the remaining counts. The verdict forms indicate that the jury found Fears guilty of the first, second, third, fourth, and fifth specifications to the first four counts and the first and second specifications to the remaining counts. The judgment entry reflects that Fears was found guilty of the first four counts and the first five specifications to those counts, as well as the remaining counts and the first and second specifications to those counts. But the specifications as enumerated were the ones on which Grant was indicted.
Although we are concerned that the enumeration of the specifications referred to at trial are inconsistent with the enumeration contained in the indictment, we are constrained by the procedural posture of this case, including the fact that the Ohio Supreme Court has affirmed Fears's conviction on direct appeal, and must conclude that resjudicata precludes the recognition of any error for the purposes of postconviction relief, because the irregularity could have been raised at trial or on direct appeal. This determination does not, however, foreclose the issue being raised by means of another procedure.[2]
 II. Summary Judgment
In challenging the trial court's dismissal of his R.C. 2953.21
petition to vacate or set aside the judgment, Fears raises two assignments of error. In his first assignment, Fears claims that the trial court erred in granting the state's motion to dismiss his petition. In this assignment, Fears argues generally that the trial court erred by (1) failing to follow the procedure required by Civ.R. 56 in dismissing his petition and (2) failing to grant him an evidentiary hearing.
As to that portion of Fears's first assignment arguing the mandatory application of summary-judgment procedures to a postconviction petition, we have previously explained that the specific statutory requirements of postconviction proceedings take precedence when in conflict with the civil rules.[3] Further, "R.C. 2953.21 allows the trial court to dismiss the petition summarily, with or without further submissions from either party, when a postconviction petition and the files and record of the case show that the petitioner is not entitled to relief."[4]
Thus, it was not error for the trial court to fail to use a summary-judgment analysis in its determination of Fears's petition. Whether Fears was entitled to an evidentiary hearing on any of his claims for relief is an issue that we address in our determination of his second assignment.
 III. Postconviction Proceedings
Fears's second assignment reiterates his first, but is tailored to address the merits of specific claims for relief, not the procedures applicable to postconviction proceedings generally. He raised seventeen claims for relief below. Fears contends, on appeal, that the trial court's decision as to fifteen of those claims was erroneous. Consequently, Fears seeks either a new trial or discovery and an evidentiary hearing.
"To prevail on a postconviction claim, the petitioner must demonstrate a denial or infringement of his rights in the proceedings resulting in his conviction that rendered the conviction void or voidable under the Ohio Constitution or the United States Constitution."[5] A postconviction claim may be dismissed without a hearing "when the petitioner fails to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief."[6]
A claim may be dismissed based on res judicata. Res judicata bars a claim that was raised or could have been raised at trial or on direct appeal.[7]
A. Evidence Dehors the Record
A petitioner, however, cannot overcome the res judicata bar merely by providing evidence dehors the record. To defeat the application of res judicta, the evidence dehors the record must meet some threshold level of cogency. It must be "competent, relevant and material" to the claim, be more than marginally significant, and advance the claim "beyond mere hypothesis and a desire for further discovery."[8] Thus, it must not be cumulative of or alternative to evidence presented at trial.[9] The evidence "must be more than evidence which was in existence and available to the defendant at the time of the trial and which could and should have been submitted at trial if the defendant wished to make use of it."[10]
If the submitted evidence dehors the record consists of affidavits, the trial court should consider all the relevant factors when assessing the credibility of the affidavits. These factors include whether the judge reviewing the postconviction petition is the same judge who presided over the trial, whether the affidavits submitted contain identical language or appear to have been drafted by the same person, whether the affidavits contain or rely on hearsay, whether the affiants are relatives of the petitioner or interested in the petitioner's success, and whether the affidavits contradict evidence proffered by the defense or are inconsistent with or contradicted by the affiant's trial testimony.[11]
B. Ineffective Assistance of Counsel
The majority of Fears's claims for relief assert ineffective assistance of counsel. To prevail on these claims, Fears had to demonstrate (1) that his trial counsel substantially violated his essential duties to Fears and (2) that as a result Fears was denied some substantive or procedural right that made the trial unreliable or the proceeding fundamentally unfair.[12] Thus, to demonstrate that an evidentiary hearing was warranted, Fears had to proffer evidence that, if believed, would establish both of these prongs.[13] To prove prejudice for failure to present additional mitigation evidence, Fears had to show "a reasonable probability that the evidence would have swayed the jury to impose a life sentence."[14]
Broad assertions of prejudice and generally conclusory allegations of ineffective assistance of counsel are inadequate as a matter of law to require an evidentiary hearing.[15] Additionally, there is a strong presumption that a licensed attorney is competent and that a challenged activity is a sound trial strategy under the circumstances.[16]
Generally, the introduction of evidence dehors the record in support of a claim of ineffective assistance of counsel is sufficient, if not to mandate a hearing, at least to avoid dismissal on the basis of res judicata.[17] The doctrine of resjudicata, however, may bar the claim where the petitioner was represented by new counsel on direct appeal, where counsel failed to raise the issue of trial counsel's incompetence, and where the issue could fairly have been determined without evidence dehors
the record.[18]
 IV. Claims for Relief
Fears first argues that the trial court erred by concluding that the second, third, sixth, sixteenth, and seventeenth claims for relief contained in his petition were res judicata, because he had provided evidence dehors the record to support those claims. We address this argument during our discussion of those individual claims. Fears remaining claims allege ineffective assistance of counsel during either the guilt or the penalty phase of his trial. Fears does not assert error in the trial court's determination of his first and seventh claims for relief. We examine each claim for relief separately unless otherwise indicated.
A. Firearms Expert and Gun Recall
Fears's second and third claims for relief asserted that trial counsel was ineffective for failing to present evidence that the gun used in the murder might have malfunctioned. (Fears's defense was that he did not purposely cause the death of Gilliam.) Fears premises his claims on counsel's failure to (1) hire a firearms expert to provide evidence of an accidental shooting and (2) introduce evidence that the type of gun used in the murder was subject to a recall because of a defect that could result in misfiring. Fears focuses on the affidavit provided by Cleon Maurer, a firearms expert, and a copy of a page from an August 1984 periodical concerning Colt 25 ACP automatic pistols marketed between 1957 and 1973, identified by serial numbers that began with the letters OD or ended with the letters CC. (The gun in this case fit that description.) He also refers to an affidavit in which a juror stated that she had doubts about whether the gun fired accidentally and that a firearms expert for the defense would have been helpful.
The trial court concluded that Fears's claims were barred by resjudicata. Further, as to the second claim, the court determined that Fears had failed to prove prejudice. As to the third claim, it concluded that there was no evidence that Fears mishandled or dropped the gun.
First, the juror's affidavit should not have been considered. Thealiunde doctrine and Evid.R. 606(B) prevent the consideration of juror affidavits unless the record provides "the foundation required to establish prima facie evidence that extraneous prejudicial information was considered by the jury.[19] Such was not the case here.
Maurer's affidavit criticized the failure of the state's firearms expert, William Schrand, to provide certain testimony concerning the testing of the murder weapon. It also indicated that Maurer would have contradicted the state's expert by testifying that an object hitting the back of the hammer of the gun and causing it to fire could prevent the slide of the gun from clearing the casing automatically. Fears's theory now is that the other gun he was holding at the time of the murder might have knocked against the murder weapon hard enough to cause it to fire accidentally. According to Fears, Maurer's testimony would have bolstered the theory of an accidental firing.
Maurer's affidavit also referred to the recall notice. That notice stated that some of the pistols like the one used by Fears in this case were susceptible to accidental discharge "if improperly carried with a round in the chamber, and dropped or otherwise carelessly handled."
Evidence dehors the record must be "competent, relevant and material" to the claim, be more than marginally significant, and advance the claim "beyond mere hypothesis and a desire for further discovery."[20] Maurer's affidavit supported the state expert's testimony as to the proper functioning of the gun and its safety features. Other parts of his affidavit were inconclusive due to his inability to perform certain tests. The evidence presented by Fears failed to advance the claims beyond speculation and a desire for further discovery.
Further, even were the evidence cogent, when examined with the transcript, files, and records of this case, Fears's claims failed to provide substantive grounds for relief. First, Fears's trial counsel made a tactical decision not to rebut Schrand's testimony with a firearms expert, but to rely instead on cross-examination. We cannot say such a tactic was outside the range of reasonable professional conduct.[21]
Second, although the evidence in the record demonstrates that Fears was holding two guns when he shot Gilliam, it also demonstrates that before firing the gun, Fears terrorized Gilliam and stated, "I don't give a fuck about killing you." It took six and one-half pounds of pressure on the trigger to cause the gun to fire. Nothing in the record demonstrates that he mishandled or dropped either gun. Schrand found no evidence that the hammer of the murder weapon had been hit by another hard piece of metal sufficient to supply enough energy to cause the gun to discharge. There were no scratches, nicks or other physical evidence of striking. Thus, because the evidence Fears presented did not constitute legitimate evidence dehors the record, and because the record otherwise belies Fears's claims, we do not believe the trial court erred in determining that his claims were barred byres judicata.
B. Fears's Alcohol Abuse
In his fifth claim for relief, Fears asserted that his trial counsel was ineffective for failing to investigate, prepare, and present evidence of Fears's substance abuse and its effect on the night he murdered Gilliam. He supported his petition with the affidavits of Grant, his girlfriend, and himself, as well as the affidavit of Dr. Robert Smith. The affidavits of Grant and Fears indicated that Fears was "high" on the night of the incident. Fears's girlfriend indicated that he was impulsive when he drank. Dr. Smith stated that Fears was under the influence of alcohol and marijuana, that his cognitive functioning was impaired, and that alcohol and marijuana cause "impulsivity, distorted perceptions, impaired judgment, decreased problem solving skills, increased reaction times, incoordination [sic], impaired memory, and significant mood swings."
The decision whether to pursue an intoxication defense is a trial strategy. Fears's trial strategy was that he did not purposely shoot Gilliam. Intoxication, however, does not necessarily negate purpose.[22] Because purpose and intoxication can co-exist, negation of the purpose element of aggravated murder in this case also required evidence that Fears did not specifically intend to cause the death of Gilliam.[23]
Even if we assume that all the affidavits were competent, the information provided in them failed to show that Fears did not intend to kill Gilliam. The evidence in the record clearly shows that Fears terrorized Gilliam and specifically chose to kill him. Thus, because Fears failed to demonstrate that his counsel's assistance was ineffective or that his defense was prejudiced by the failure to raise a defense of intoxication, we affirm the trial court's summary dismissal of this claim.
C. Failure to Impeach a Witness with Prior Testimony
In his sixth claim for relief, Fears claimed that trial counsel was ineffective for failing to impeach Frazier with inconsistencies from his testimony at Grant's trial. Fears claims that the trial court erred by invoking res judicata to bar this claim, because he attached a transcript of Frazier's testimony from Grant's trial. That testimony was provided on October 2, 1997. The jury was impaneled for Fears's trial on October 14, 1997. Frazier testified at Fears's trial on October 20, 1997. The testimony from Grant's trial was in existence and available to Fears at the time of the trial and should have been submitted if Fears wished to make use of it. Further, we cannot conclude that this impeaching evidence was more than marginally significant. Thus, the trial court was correct in concluding that Fears's claim was barred by res judicata.
D. Failure to Request a Mistrial
Fears's ninth claim for relief asserted that his trial counsel was ineffective for failing to request a mistrial after learning that a juror had spoken with Fears's family members and friends during a break in the trial.
The affidavits of Fears's mother, his girlfriend, and his girlfriend's mother indicated that a man, whom the three women later identified as a juror, had been in the hall where the three women had discussed the case. The man agreed with the women that the judicial system was "messed up" and "life was not fair." The women stated that they related the incident to trial counsel, who did nothing about it. Obviously, Fears's trial counsel made a tactical decision not to seek a mistrial upon learning that a juror had views seemingly favorable to his client. We cannot say that this evidence provided sufficient operative facts to demonstrate unreasonable conduct on the part of Fears's trial counsel.
E. Failure to Investigate, Prepare, and Present Mitigation Evidence
In his fourth claim for relief, Fears claimed trial counsel was ineffective during mitigation, because counsel failed to present evidence of the significance of Fears's early childhood abuse and his history of alcohol abuse. In challenging the trial court's dismissal of this claim, Fears now focuses on two pieces of evidence dehors the record: (1) the affidavit of a juror claiming that the mitigation evidence provided by Dr. Smalldon, a psychologist who testified during the penalty phase on behalf of the defense, was insufficient to persuade her not to recommend the death penalty, and (2) the affidavit of Dr. Smith concerning the effect of alcohol abuse, childhood abuse, and intellectual limitations on Fears's ability to cope with life's stresses.
The juror's affidavit, as we have already noted, was not properly before the trial court. Dr. Smalldon provided an extensive analysis of Fears's relationship with his family, his childhood, his drug and and alcohol use, his coping mechanisms, his neuropsychological functioning, his IQ, his narcissistic antisocial personality, and how those factors had played a role in the murder of Gilliam. Counsel also provided testimony from family members, a neighborhood attorney, and a social worker. There was substantial evidence evidence presented during the mitigation phase of the trial. The affidavit of Dr. Smith presented a mitigation theory that was no more than alternative or cumulative to Dr. Smalldon's theory.[24]
Thus, Fears's evidence was insufficient to demonstrate ineffective assistance.
F. Failure to Present Cultural Expert Testimony
In his eighth claim for relief, Fears asserted that trial counsel was ineffective for failing to provide evidence concerning Fears's cultural background during mitigation. This was nothing more than an alternative mitigation theory.[25] Thus, Fears failed to provide substantive grounds for his claim of ineffective assistance in this respect.
G. Inadequate Investigation into Fears's Institutional Adjustment
In his tenth claim for relief, Fears claimed that trial counsel failed to appropriately investigate his adjustment to incarceration. In support, Fears provided affidavits of four correctional officers stating that Fears had followed the rules while incarcerated and that he was respectful. Dr. Smalldon testified that he observed Fears being friendly and respectful to corrections officers while he was incarcerated and that his history indicated that he would adjust well to an institutional setting. The evidence dehors the record was merely cumulative to that presented by Dr. Smalldon, and thus failed to materially advance Fears's claim of ineffective assistance.[26]
H. Ineffective Communication with Mitigation Specialist
In his eleventh claim for relief, Fears claimed that he did not receive effective assistance because trial counsel failed to communicate sufficiently with his mitigation specialist. Fears attached the affidavit of his mitigation specialist and the affidavit of a mitigation expert. His mitigation specialist stated that she had only one brief meeting with trial counsel and that counsel had initially had meetings with mitigation witnesses without her. The mitigation expert's affidavit stated that the best approach to handling a capital case is a team approach. Fears failed to demonstrate how counsel's conduct prejudiced his defense. Although this claim was raised in a different context in his direct appeal, we agree with the Ohio Supreme Court that defense counsel was adequately prepared and was able to present mitigation testimony effectively.[27]
I. Failure to Investigate and Call Corroborating Witnesses
In his twelfth claim for relief, Fears contended that he was denied effective assistance because counsel failed to call witnesses to corroborate his history of physical abuse. In his thirteenth claim for relief, he contended that counsel was ineffective because counsel failed to discover witnesses to corroborate Fears's horrible childhood and to humanize him for the jury. In his fourteenth claim for relief, Fears alleged that counsel was ineffective for failing to put on evidence to verify the abuse and neglect Fears suffered as a child.
"It is the obligation of counsel to make reasonable investigations or to make a reasonable decision that makes specific investigations unnecessary. A particular decision not to investigate must be examined for reasonableness under the circumstances with strong measures of deference to counsel's judgment."[28] Likewise, whether to call a witness is a trial-strategy decision and, absent prejudice, does not constitute ineffective assistance of counsel.[29]
In this case, Fears's counsel called his aunt as a witness to testify about the instability of Fears's home life, his mother's depression, the negative influence of Fears's father's alcoholism and his inappropriate parenting. She stated that the parents failed to meet Fears's basic needs for clothing and food. She also testified that she believed Fears was a good person who became involved with the wrong people.
Dr. Smalldon testified that Fears had little supervision or structure as a child, that his relationship with his mother was, at best, ambivalent, that Fears's family environment was violent, and that Fears's father was physically abusive to the members of the family. He testified that Fears's father would take Fears with him when he engaged in trysts with other women and that he supplied alcohol to Fears, beginning at the age of six, to obtain Fears's silence about the affairs. Consequently, according to Dr. Smalldon, Fears grew up without a core sense of values.
Fears's mother testified that his father would throw the children against a wall and shoot them with a BB gun. She stated that Fears took care of her and that he respected her. Fears's older sister testified that Fears's father would ram his fists into the children's chests, backs, and heads and whip them with a belt across their backs, legs, and arms. He would require the children to wear clothing to hide the bruises. She testified that she raised the younger children because the parents were never home. She testified that Fears was a good person, always there for her, but that he was a follower.
An attorney in an office close to Fears's neighborhood testified that when Fears was approximately fourteen years old, he and his friends would come by the office looking to earn money. He stated that Fears was a "good kid" and was always polite and respectful. He represented Fears once on a driving-under-the-influence charge and testified that Fears had a drinking problem. A social worker from a juvenile facility testified that Fears's environment made it difficult for him to break out of delinquent behavior and that his mother was unwilling or unable to discipline her children.
Fears's brother testified that Fears's father would beat the children and, in one instance, made them line up against a wall so that he could shoot them with a BB gun. He recalled another instance where the father made him and Fears urinate in a sleeping uncle's mouth. He testified that they had no supervision. He described Fears as a follower and not very intelligent. He testified that Fears was not the type of person who would normally hurt someone else.
Fears's stepmother also testified. She stated that she had spent time with Fears and that Fears was not one to make his own decisions. She also stated that he did poorly in school and that she had tried to convince him to try harder. She stated that she believed that Fears could be rehabilitated.
The affidavits of Fears's father, a friend, his girlfriend, and a paternal aunt, all submitted with Fears's postconviction petition, only added additional support for the mitigation theory already presented-that Fears was an abused child whose alcoholism and environment made him a follower. The juror's submitted affidavit could not properly be considered under Evid.R. 606(B) and thealiunde rule. Thus, we conclude that the evidence dehors
the record was primarily cumulative and failed to materially advance Fears's claim of ineffective assistance.
J. Failure to Have Jury Consider All Relevant Mitigation Evidence
In his fifteenth claim for relief, Fears asserted that the failures we have already discussed resulted in the jury not hearing all the mitigation evidence and, thus, cumulatively gave rise to ineffective assistance of counsel. The evidence that Fears wished to have presented was merely cumulative, a repackaging of evidence already presented, or failed to materially advance his claims. Having determined that each example of alleged ineffective assistance of counsel is meritless, there is no cumulative effect to recognize as prejudicial error.
K. Res Judicata as to Fears's Sixteenth and Seventeenth Claims
In his sixteenth and seventeenth claims for relief, Fears claimed that the death penalty as administered in Ohio was a violation of the Eight Amendment and the Due Process and Equal Protection Clauses of the Ohio and United States Constitutions, when carried out either by electrocution or by lethal injection. He now argues that because he provided evidence dehors the record, the trial court erred by determining that the claims were barred by resjudicata. Because the Ohio Supreme Court has rejected similar constitutional claims on their merits,[30] we conclude that no prejudicial error resulted from the trial court's application ofres judicata.
Fears' first and second assignments are overruled, and the trial court's summary dismissal of his postconviction petition is affirmed.
Judgment affirmed.
 Hildebrandt, P.J., and Gorman, J., concur.
[1] State v. Fears (1999), 86 Ohio St.3d 329, 715 N.E.2d 136.
[2] Accord State v. Gibbs (Dec. 11, 1998), Hamilton App. No. C-971087, unreported.
[3] State v. Moore (Sept. 18, 1998), Hamilton App. No. C-970353, unreported.
[4] Id.
[5] State v. Campbell (Jan. 8, 1997), Hamilton App. No. C-950746, unreported.
[6] Id.
[7] State v. Perry (1967), 10 Ohio St.2d 175, 266 N.E.2d 104, paragraph nine of the syllabus.
[8] State v. Coleman (Mar. 17, 1993), Hamilton App. No. C-900811, unreported.
[9] State v. Combs (1995), 100 Ohio App.3d 90, 98, 652 N.E.2d 205,212.
[10] State v. Coleman, supra.
[11] State v. Calhoun (1999), 86 Ohio St.3d 279, 284-285,714 N.E.2d 905, 911-912.
[12] See State v. Combs at 101, 652 N.E.2d at 211-212.
[13] See State v. Jackson (1980), 64 Ohio St.2d 107,413 N.E.2d 819, 820, syllabus.
[14] State v. Coleman (1999), 85 Ohio St.3d 129, 139,707 N.E.2d 476, 486.
[15] State v. Jackson at 111, 413 N.E.2d at 822.
[16] State v. Thompson (1987), 33 Ohio St.3d 1, 11,514 N.E.2d 407, 417.
[17] State v. Cole (1982), 2 Ohio St.3d 112,443 N.E.2d 169.
[18] State v. Sowell (1991), 73 Ohio App.3d 672, 598 N.E.2d 136.
[19] State v. Mills (Mar. 15, 1995), Hamilton App. No. C-930817, unreported.
[20] State v. Coleman, (Mar. 17, 1993), Hamilton App. No. C-900811, unreported.
[21] See State v. Nicholas (1993), 66 Ohio St.3d 431,613 N.E.2d 225.
[22] State v. Combs at 101, 652 N.E.2d at 212.
[23] Id.
[24] See State v. Combs at 103, 652 N.E.2d at 213.
[25] See id.
[26] See id.
[27] See State v. Fears at 347, 715 N.E.2d at 153.
[28] State v. Williams (1991), 74 Ohio App.3d 686, 695,600 N.E.2d 298, 304.
[29] Id.
[30] See State v. Ashworth (1999), 85 Ohio St.3d 56, 71,706 N.E.2d 1231, 1242-1243, certiorari denied (1999), ___ U.S. ___, 1999 WL 592979, and cases cited therein.