This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Scott D. Sanders, appeals his conviction in the Summit County Court of Common Pleas. We affirm.
 I.
In the early morning hours of September 20, 1999, Harold Moody was delivering newspapers for the Akron Beacon Journal. At one point, a man entered Mr. Moody's truck and repeatedly asked for a ride. Mr. Moody refused, and consequently, the man pulled out a gun, pointed it at Mr. Moody, and ordered him out of the vehicle. Mr. Moody complied, but was shot in the back as he exited the vehicle. When the police arrived, Mr. Moody described his attacker as a black male, in his early twenties, 5'2" to 5'5" tall, and approximately 130 pounds — Mr. Sanders is actually closer to 5'10" tall and 150 pounds. The following day, Mr. Moody notified the police that he had a cellular phone in his truck. Through the cellular phone records, the police interviewed various people, who had been called on Mr. Moody's cellular phone, and eventually, determined that Mr. Sanders had been in possession of and had been using Mr. Moody's cellular phone on September 20 and 21, 1999. Mr. Sanders claimed that he had purchased the telephone on the street on September 20, 1999. On November 4, 1999, Mr. Moody was shown a six-photo array and asked if he recognized any of the six individuals. He identified Mr. Sanders as his attacker.
On December 28, 1999, the Summit County Grand Jury indicted Mr. Sanders on one count of aggravated robbery, in violation of R.C. 2911.01(A)(1); one count of attempted aggravated murder, in violation of R.C. 2903.01(B) and 2923.02; and one count of felonious assault, in violation of R.C.2903.11(A)(1) and (2). Each of these charges had an accompanying firearm specification, pursuant to R.C. 2941.145. A jury trial was held, commencing on March 6, 2000. In a verdict journalized on March 24, 2000, the jury found Mr. Sanders guilty of the charges in the indictment. The trial court merged the charges of felonious assault and aggravated robbery with the charge of attempted aggravated murder, and sentenced Mr. Sanders accordingly. This appeal followed.
 II.
Mr. Sanders asserts three assignments of error. We will address each in due course.
 A. Third Assignment of Error APPELLANT'S CONVICTION FOR ATTEMPTED AGGRAVATED MURDER MUST BE REVERSED AS THE VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND/OR WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Mr. Sanders asserts that his conviction for attempted aggravated murder was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.
When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.
(Emphasis omitted.) State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 4.
To constitute an attempt, the defendant must "purposely or knowingly, when purpose or knowledge is sufficient culpability for the commission of an offense, engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A). R.C. 2903.01(B) defines aggravated murder and states in relevant part:
 No person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape.
In the present case, we find that Mr. Sanders' conviction for attempted aggravated murder was not against the manifest weight of the evidence. At trial, Mr. Moody testified that in the early morning hours of September 20, 1999, he was delivering newspapers, when a man sat down in the passenger's seat of his truck and repeatedly asked for a ride. Although the dome light of the truck did not work, the inside of vehicle was apparently lit by streetlights. Mr. Moody refused to give the man a ride because he had not yet finished his paper route; consequently, the man pointed a handgun at him and ordered him out of the truck. Mr. Moody attempted to get out of the truck as quickly as possible, but was shot in the back as he exited the vehicle.
Although Mr. Moody's height and weight description of his attacker did not match Mr. Sanders, he testified that he never viewed the man standing, only sitting next to him in the vehicle. A little over a month after the incident, Mr. Moody identified Mr. Sanders as his attacker through a six-photo array. He also made an in-court identification of Mr. Sanders as the perpetrator.
During the investigation, Mr. Moody informed Sergeant John Callahan of the City of Akron Police Department that he had a cellular phone in the truck. Sergeant Callahan obtained the telephone records and began interviewing individuals, who had been called on Mr. Moody's cellular phone during the relevant time frame. One of these people, Lakisha Portis, told Sergeant Callahan that she had received a telephone call late on the night of September 20 or 21, 1999 from Mr. Sanders, her former boyfriend. Ms. Portis testified that Mr. Sanders wanted to come to her residence because he was scared and admitted to shooting someone. She stated that Mr. Sanders told her that the shooting took place on "Crest something." In fact, the incident occurred in the vicinity of Crestwood. Although Ms. Portis had personal difficulties with Mr. Sanders and at one point obtained a temporary restraining order against Mr. Sanders, the jury was free to believe or disbelieve any or part of her testimony.
Furthermore, Ruben Ruple, Mr. Sanders' cousin, testified that he went socializing with Mr. Sanders in the late afternoon of September 20, 1999 and returned in the early morning hours of September 21, 1999. He had personally used the cellular phone, which Mr. Sanders had brought with him, and had seen Mr. Sanders and another friend use the same phone. Mr. Ruple, along with other witnesses, noted that Mr. Sanders did not have a cellular phone prior to that date. When interviewed by Sergeant Callahan, Mr. Sanders explained that he had purchased the cellular phone on the street, apparently, not an uncommon practice.
Mr. Moody's truck was eventually recovered, and Detective Michael Fox dusted the truck for fingerprints and searched for other physical evidence. He testified that he found no physical evidence of any evidentiary value and that the fingerprints, which he lifted from the truck, either did not match Mr. Sanders or were inconclusive as to the results. Detective Fox noted that the fingerprint evidence neither established that Mr. Sanders was inside the vehicle, nor does it exclude Mr. Sanders as the possible perpetrator. After thoroughly reviewing the record, we conclude that the jury did not clearly lose its way and commit a manifest miscarriage of justice in convicting Mr. Sanders of attempted aggravated murder. Consequently, we find that his conviction was supported by sufficient evidence. See Roberts, supra, at 4. Mr. Sanders' third assignment of error is overruled.
 B. First Assignment of Error THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY PERMITTING THE VICTIM, HAROLD MOODY, TO TESTIFY AS TO HIS OUT-OF-COURT IDENTIFICATION OF DEFENDANT FROM A PHOTOGRAPHIC ARRAY. THE PHOTO ARRAY WAS IMPERMISSIBLY SUGGESTIVE AS TO GIVE RISE TO A VERY SUBSTANTIAL LIKELIHOOD OF IRREPARABLE MISIDENTIFICATION.
In his first assignment of error, Mr. Sanders avers that the trial court erred in permitting testimony regarding Mr. Moody's out-of-court identification of Mr. Sanders as the perpetrator from a photo array because the photo array was impermissibly suggestive so as to give rise to a very substantial likelihood of irreparable misidentification. We disagree.
A photographic identification procedure is violative of due process of law only if it was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v.United States (1968), 390 U.S. 377, 384, 19 L.Ed.2d 1247, 1253. In determining whether a photographic identification procedure was impermissibly suggestive, "[t]he court looks to several factors, including the size of the array, its manner of presentation, and its contents." State v. Brown (Aug. 19, 1998), Summit App. No. 18591, unreported, at 7. Furthermore, an identification from such procedure will be suppressed only if the picture of the defendant so stood out from the rest of the pictures, thereby suggesting to the identifying witness that the accused was most likely to be the culprit. Id.
Mr. Sanders did not object to the admission of this evidence, and therefore, he has waived all but plain error. See Crim.R. 52(B). However, we find that even if Mr. Sanders had timely objected to the admission of the pretrial identification testimony, it was properly admissible. In the present case, the photo array included six photographs of black males, who appear to be approximately the same age. Although there is some variation in skin tone and hair style, there is nothing about the photo array, which makes the defendant, or any of the other men, stand out as the perpetrator. Hence, we conclude that the photo array was not impermissibly suggestive. Mr. Sanders' first assignment of error is overruled.
 C. Second Assignment of Error DEFENDANT WAS DEPRIVED OF THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN THE PROCEEDINGS BELOW AS SECURED BY THE UNITED STATES CONSTITUTION AMENDMENT VI AND XIV AND OHIO CONSTITUTION ARTICLE I, SECTION 10.
 A. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS TRIAL COUNSEL FAILED TO FILE A MOTION TO SUPPRESS THE PRETRIAL IDENTIFICATION TESTIMONY ON THE GROUNDS THAT THE PHOTO ARRAY WAS IMPERMISSIBLY SUGGESTIVE.
 B. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS TRIAL COUNSEL DID NOT PRESENT A DEFENSE.
 C. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE APPELLANT WAS NOT GIVEN ADEQUATE TIME WITH COUNSEL TO PREPARE FOR TRIAL.
Mr. Sanders contends that he was denied the effective assistance of counsel on three grounds: (1) his trial counsel failed to file a motion to suppress the pretrial identification testimony on the grounds that the photo array was impermissibly suggestive; (2) his trial counsel did not present any witnesses, especially expert witnesses to counter the eyewitness testimony, in his defense; and (3) he was not given adequate time with counsel to prepare for trial. We disagree.
A two-step process is employed in determining whether the right to effective counsel has been violated.
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693. In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 80 L.Ed.2d at 695. The defendant has the burden of proof, and must overcome the strong presumption that counsel's performance was adequate and that counsel's action might be sound trial strategy. State v. Smith (1985), 17 Ohio St.3d 98, 100. Furthermore, an attorney properly licensed in Ohio is presumed competent. State v. Lott (1990), 51 Ohio St.3d 160, 174.
First, Mr. Sanders argues that he was denied the effective assistance of counsel because his trial counsel failed to file a motion to suppress the pretrial identification testimony on the grounds that the photo array was impermissibly suggestive. As previously discussed in the first assignment of error, the photo array was not impermissibly suggestive; therefore, we conclude that trial counsel's performance was not deficient in failing to file a motion to suppress the pretrial identification testimony and that Mr. Sanders was not prejudiced by this alleged failure.
Next, Mr. Sanders avers that his counsel's performance was deficient in failing to call any witnesses for the defense. In particular, Mr. Sanders complains that his trial counsel should have called expert witnesses to testify to the general inaccuracy of eyewitness testimony and the influence of "weapon focus" on the reliability of the eyewitness identifications. We first note that the decision of whether to call an expert witness or any witness is a matter of trial strategy. State v.Coleman (1989), 45 Ohio St.3d 298, 307-08. Furthermore, a failure by trial counsel to call a particular witness at trial does not constitute ineffective assistance of counsel, absent a showing of prejudice. Statev. Williams (1991), 74 Ohio App.3d 686, 695. Here, although Mr. Sanders' trial counsel did not call any witnesses for the defense, counsel extensively and effectively cross-examined the prosecution's witnesses, particularly regarding the reliability of Mr. Moody's pretrial identification of Mr. Sanders as the perpetrator. After carefully reviewing the record, we cannot say that counsel's performance was deficient or that Mr. Sanders was prejudiced as a result of his counsel's decision not to call any witnesses.
Lastly, Mr. Sanders contends that he was denied the effective assistance of counsel because he was not given adequate time with trial counsel to prepare a defense and that his counsel spent little time preparing a defense. Aside from this bare assertion, however, Mr. Sanders has failed to demonstrate how this alleged lack of time with counsel and how trial counsel's alleged inattention to Mr. Sanders' case adversely affected his defense. Further, he has failed to articulate how more time with his counsel would have so changed the presentation of the defense that there exists a reasonable probability that the outcome of the trial would have been different. Accordingly, we conclude that Mr. Sanders was not denied the counsel envisioned by the United States and Ohio Constitutions. Mr. Sanders' second assignment of error is overruled.
 III.
Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ WILLIAM G. BATCHELDER
BAIRD, J., WHITMORE, J., CONCUR