OPINION
Defendant-Appellant Bobby Dale Norton appeals, pro se, the trial court's judgment denying his petition for post-conviction relief. For the reasons that follow, we affirm the trial court's judgment.
The circumstances surrounding Norton's arrest, trial, and convictions were set forth in our opinion affirming his convictions and sentences. State v. Norton (Dec. 11, 1998), Greene App. No. 97-CA-112, unreported. While his appeal was pending, Norton filed a petition for post-conviction relief in the trial court alleging ineffective assistance of his trial counsel for his failure to call certain witnesses and for failing to "advocate petitioner's interests and pursue all avenues in mitigation of the allegations contained within the indictment.l" Norton also requested an evidentiary hearing. Attached to Norton's petition were four affidavits; one from Claudette Boyer, one from Paula Johnson, one from Norton's father, Walter Norton (hereinafter "Walter"), and the last from Norton himself. Boyer's and Johnson's affidavits attested to the fact that on the day of the offenses, they each saw Norton driving a blue Caprice automobile, and that they conveyed that information to Norton's trial counsel prior to trial. Norton presented these affidavits in support of his argument that the prosecution's key witness, victim Connie Bremer, stated Norton was driving a beige Escort on the day in question, and that the credibility of her testimony would have been placed in grave doubt had Norton's trial attorney called Boyer and Johnson to the witness stand.
In his affidavit, Walter stated that on March 25, 1997, he witnessed Bremer threatening to get even with Norton for taking a washer and dryer with him after moving out of the home the two had shared. Norton claimed in his petition for post-conviction relief that his father's testimony would have provided the jury with evidence that Bremer had a motive to lie about events that occurred on the day of the offenses.
In his own affidavit, Norton averred that he told his trial counsel of the three other affiants and the information they possessed, but that the attorney never pursued the issues. Norton claimed his attorney's failures constituted ineffective assistance of counsel and that his convictions and sentence should consequently be vacated, or that he should be granted an evidentiary hearing pursuant to R. C. § 2953.21(E).
The trial court issued its judgment entry dismissing Norton's petition for post-conviction relief on February 3, 1999. After reviewing Norton's petition, the attached affidavits, and all the files and records pertaining to Norton's case, the court concluded that Norton had presented no substantive grounds for relief and that he was therefore not entitled to an evidentiary hearing. The present appeal followed in a timely manner.
Although Norton asserts two assignments of error, the issues presented and arguments are duplicative, and we will therefore consider them together.
 I.
The trial court erred to the prejudice of the Appellant Bobby Dale Norton by overruling and dismissing the petition for postconviction relief without holding an evidentiary hearing pursuant to RC 2953.21(E) when Appellant had presented substantive facts alleging ineffective assistance of counsel and met the procedural requirements and caselaw requirements to merit an evidentiary hearing as a matter of law.
 II.
The trial court erred to the prejudice of the Appellant in not determining that the Appellant's petition for postconviction relief did not [sic] warrant relief as a matter of law[.]
The gravamen of Norton's arguments is that his trial attorney's failure to call certain witnesses, specifically, Boyer, Johnson, and Walter, constituted ineffective assistance of counsel. He claims testimony from those witnesses would have cast Bremer's testimony in doubt which would have presumably resulted in his acquittal. Like the trial court, however, we disagree with Norton's assessment.
R.C. § 2953.21(A)(1) provides a mechanism by which a person convicted of a criminal offense may seek postconviction relief. In rendering a judgment on a petition for postconviction relief, the first duty of the trial court is to "determine whether there are substantive grounds for relief." R.C. § 2953.21(C). If so, an evidentiary hearing is warranted; if not, the petition is dismissed. R.C. § 2953.21(E). Where the petition claims trial counsel was ineffective, "the petitioner bears the initial burden in a post-conviction proceeding to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and also that the defense was prejudiced by counsel's ineffectiveness." State v. Jackson (1980), 64 Ohio St.2d 107,111. Furthermore, the trial court should accept as true any affidavits offered in support of the petition. State v.Swortcheck (1995), 101 Ohio App.3d 770, 772, citing State v.Strutton (1988), 62 Ohio App.3d 248, 252. A defendant relying on evidence dehors the record, however, is not entitled to an evidentiary hearing unless such evidence meets "some threshold standard of cogency." State v. Lawson (1995), 103 Ohio App.3d 307,315, quoting State v. Coleman (Mar. 17, 1993), Hamilton App. No. C-900811, unreported; see also Jackson, supra. We also note that, "[i]t is well established the failure to call witnesses at trial is not a substantial violation of defense counsel's essential duty to provide effective assistance absent a showing of prejudice." State v. Coulter (1992), 75 Ohio App.3d 219, 230;State v. Williams (1991), 74 Ohio App.3d 686, 695; State v. Hunt
(1984), 20 Ohio App.3d 310, 312; State v. Reese (1982), 8 Ohio App.3d 202,203.
Here, the trial court concluded, after reviewing the affidavits, Norton's petition, and the files and record pertaining to Norton's case, that Boyer's and Johnson's statements that they witnessed Norton driving a blue Caprice rather than a beige Escort on the day in question was a "non issue." We agree. To be sure, inconsistencies between the testimony of various witnesses may impact a jury's determination as to which witnesses were credible. The record before us, however, shows that there were a great number of discrepancies between the prosecution's witnesses and the defense's witnesses, the subjects of which ranged from the trivial to the material. We agree with the trial court that the issue of what color and make of car Norton was driving is of the former variety. Aside from the fact that neither Bremer nor any other witness ever described the color or make of the car in their testimony, the bringing to light of any discrepancy on that question would be but one more insignificant inconsistency in a trial replete with discord, material and otherwise, between witnesses' stories. This case clearly turned on the credibility of the witnesses. By the verdicts, it can be concluded that the jury determined the prosecution's witnesses were more credible than the witnesses for the defense. Nothing in the record, Norton's brief, or in the affidavits attached to his petition for post-conviction relief suggests that there is any reason to believe the scales of credibility would have been tipped in favor of Norton by introduction of the tangential inconsistency concerning the car Norton was driving. We conclude, as did the trial court, that on this issue Norton has fallen far short of demonstrating that his attorney's decision not to call Boyer and Johnson as witnesses evidenced a lack of competence on the part of his trial counsel. Even if we were to find otherwise, however, we are unconvinced that the outcome of Norton's case would have been different had Boyer and Johnson testified. Thus, the trial court correctly determined that Norton's petition and supporting affidavits did not establish the substantive grounds for relief necessary to warrant an evidentiary hearing.
Next, Norton contends his trial counsel's failure to call his father, Walter, as a witness was ineffective assistance of counsel. In his affidavit, Walter averred that some time before the incident on April 30, he heard Bremer threaten his son by saying he would "be sorry" for taking a washer and dryer from the home Norton and Bremer had shared, and that she would "get even" with him. Norton claims introduction of this evidence was critical to his defense.
The trial court stated that although Walter's testimony could have been presented to show bias or motive on Bremer's part to fabricate her testimony, its usefulness was "doubtful." The court reasoned that animosity is common when relationships dissolve and concluded that any effect the witnesses' statements might have had on the jury was purely speculative. We agree.
One can easily come to the conclusion that hostilities existed between Norton and his victim by a perusal of the record. Although Norton sought to portray his relationship with Bremer as one in which reconciliation was being considered, the fact that a restraining order had been issued against him with respect to Bremer belies his assertions that his efforts toward a reunion were welcomed or even tolerated. In addition, we observe that during opening statements, Norton's attorney stated the evidence would show that Bremer had threatened to get even with Norton for taking the washer and dryer. Immediately afterward, and out of the jury's presence, some debate took place between Norton's attorney, the prosecutor, and the trial judge as to whether such evidence would be admitted at trial. The State contended the defense had opened the door to testimony about the volatile nature of the relationship by including Bremer's threats in its opening. The judge cautioned the defense as follows:
 Well, I don't necessarily agree the door has been opened at this point in time. Mr. Fricker [Norton's defense attorney], it's on the verge of being opened. So, I mean whether you agree or disagree or whatever, if evidence is presented with regard to, well for lack of a better term, a motive or background with regard to this relationship and things such as that, I'm going to allow a very broad cross examination. Now, I'm not so sure that I'll allow that cross examination to go beyond this victim. I'll have to deal with that as we get there. But I would allow, needless to say, if there is evidence that is being presented for purposes of showing that there is some type of, as it says, a vendetta then I'm going to open, I guess, I'm going to open up this relationship for review and consideration of the jury.
Tr. at 23. It is entirely probable that, as a result of this warning, Norton's counsel made a tactical decision not to call Walter to the stand rather than expose Norton's relationship with his victim to the intense scrutiny foreshadowed by the judge's remarks. Instead of ineffective assistance of counsel, we find Norton's trial counsel's decision reasonable, conscientious, and probably wise. Furthermore, we cannot say on this record that but for the alleged error, the outcome of Norton's trial would have been different. Thus, Norton's arguments fall short of establishing substantive grounds for post-conviction relief. We consequently find no error by the trial court in its denial of his petition without an evidentiary hearing.
Norton also argues that he should have been granted an evidentiary hearing so that the credibility of the affiants can be determined. We, however, like the trial court, presume the truth of the affiants' statements when we review a trial court's determination that no evidentiary hearing is warranted.
Swortcheck, supra. In addition, Norton claims that "the files and records of the case did not affirmatively disprove that Appellant was entitled to releif [sic]." It is Norton, however, who bears the initial burden to submit evidentiary documents demonstrating the lack of competent counsel and prejudice from counsel's ineffectiveness. Jackson, supra. Therefore, these arguments are unavailing.
After reviewing the record, briefs, and affidavits before us, we conclude that Norton's claim that his attorney's failure to call certain witnesses constituted ineffective assistance of counsel does not present substantive grounds for post-conviction relief. Our review of the record shows instead that his trial counsel's representation was capable, well-prepared, and zealous. Moreover, even if we had found Norton's trial counsel to have erred, we could not say that there exists a reasonable probability that, but for the errors, the result of the trial would have been different. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. As such, we could not have found that Norton demonstrated the necessary prejudice resulting from counsel's performance which would have required an evidentiary hearing on his petition for post-conviction relief.
For the foregoing reasons, Norton's two assignments of error are overruled, and the judgment of the trial court is affirmed.
. . . . . . .
GRADY, P.J., and WOLFF, J., concur
Copies mailed to:
Robert K. Hendrix
Bobby Dale Norton
Hon. Thomas Rose