JOURNAL ENTRY AND OPINION
Defendant-appellant Dwayne Wilson (Wilson) appeals from his jury trial conviction of one count of Intimidation in violation of R.C. 2921.03(A), a third degree felony.[1] For the reasons adduced below, we affirm.
A review of the record on appeal indicates that Wilson was paroled from prison on May 11, 1999, subsequent to having served time for two convictions for Gross Sexual Imposition. As a result of that conviction, Wilson was placed under post-release controls. Part of those controls was that he could not have access to a firearm. This condition prompted Wilson's parole officer, Gerald Coats (Coats), to instruct Wilson not to reside at his normal home because Wilson's spouse, who was a security guard at MetroHealth Medical Center in Cleveland, possessed and carried a firearm. According to Coats, Wilson did not agree with this arrangement.
On June 9, 1999, Coats caused a warrant to be issued for Wilson's arrest because Wilson had gone to live with his spouse (instead of the approved location of the City Mission while the firearm issue was being determined) without authorization and because Wilson had failed to report to Coats pursuant to the terms of post-release control. Efforts to arrest Coats at his home were not successful in the morning hours of June 9, 1999. Shortly after the non-arrest of Wilson, on the morning of June 9, 1999, a telephone call was placed to Coats at his office; Coats was not in the office to accept this call. The caller, identified through telephone message records as Wilson, told the person taking this call that Coats had better have a bulletproof vest, because the caller had one. Later, Wilson telephoned Coats again. During this second call, Wilson, lacing his conversation with abuse and profanity, threatened the Parole Authority to stop fucking with him, and failing this, he would come to the Parole Authority office and deal with you all and do an execution. (Tr. 217-218.) Coats testified that he was not frightened by these calls due to the presence of other armed officers around him in the context of his office. Telephone records indicate that these telephone calls were placed from Tower City Center, which is approximately two blocks from the offices of the Parole Authority in downtown Cleveland, which proximity to the office prompted the staff to be alerted to Wilson's threats.
Eventually, Wilson was arrested on June 9, 1999, by the Fugitive Unit of the Parole Authority and charged with three violations of his post-release control sanctions, namely, failing to report, changing his address without the prior approval of the Parole Authority, and threatening his parole officer. Officers taking part in that arrest testified that, prior to their entering the home where Wilson was located, they overheard Wilson speaking to someone on the telephone in a heated manner, telling the caller that the charges were unfounded, that the caller had better have a bulletproof vest if the caller came to Wilson's home, and that Wilson was not going to take this anymore; the officers entered the home and arrested Wilson after Wilson had ended the telephone call. (Tr. 284, 285-293, 313-333.) Wilson, subsequent to a hearing at the Lorain Correctional Institution within fifteen days of his arrest at which time he entered a plea of not guilty, was found to have violated these three charges and was returned to prison for an additional ninety days imprisonment on these three post-release violations.
While these matters were proceeding, Coats, upon the instructions of his supervisor (Tr. 247-249), filed a criminal complaint against Wilson for Intimidation stemming from the previously detailed telephone calls which were placed to him by Wilson. Subsequent to Wilson being released from prison for having violated his post-release control sanctions, Wilson, while reporting to Coats, was arrested on the charge of Intimidation.
Wilson was indicted on September 28, 1999, for the one count of Intimidation, and entered a plea of not guilty at his October 1, 1999 arraignment. Attorney William T. McGinty was assigned as defense counsel at the arraignment.
The jury trial commenced on January 12, 2000, and concluded on the morning of January, 20, 2000, with Wilson's conviction. The trial court sentenced Wilson on January 20, 2000, to a term of three years imprisonment.
This appeal from that conviction presents five assignments of error by the Public Defender's office, and a hodgepodge assortment of putative arguments in Wilson's separately filed pro se appellate brief. We will address the Public Defender's assignments first.
The first assignment of error by the Public Defender provides:
 DWAYNE WILSON'S CONVICTION FOR INTIMIDATION VIOLATES HIS CONSTITUTIONAL RIGHT AGAINST DOUBLE JEOPARDY, AS HE HAD ALREADY BEEN PUNISHED FOR THE ACT BY HIS PRISON TERM FOR A POST-RELEASE CONTROL SANCTION.
In this assignment, appellant argues that he was placed in jeopardy twice for the same offense arising from the threatening telephone calls by virtue of his having been punished by the Parole Authority for violating his post-release control sanction and then being tried and convicted in the trial court; this Parole Authority punishment is viewed by the appellant as not being civil in nature or remedial in purpose, hence a violation of double jeopardy. Wilson relies on our holding in State v. Jones (Sept. 2, 1999), Cuyahoga App. No. 74247, unreported, in urging reversal based on the application of double jeopardy.
In Jones, this court determined that R.C. 2967.28, the statute which authorizes post-release controls under the auspices of the Parole Authority, was unconstitutional (violating separation of powers and due process) and that the post-release control system was not civil in nature and remedial in purpose. Subsequent to the filing of the appellant's briefs, the Supreme Court of Ohio reversed and remanded our holding in the Jones case based on the authority of Wood v. Telb (Aug. 3, 2000),89 Ohio St.3d 504, 733 N.E.2d 1103, 2000 Ohio LEXIS 1856, which declared in the first paragraph of the Syllabus that R.C. 2967.28 does not violate the separation of powers doctrine or the Due Process Clauses of the United States or Ohio Constitutions. See State v. Jones (Aug. 3, 2000),89 Ohio St.3d 519.
Since R.C. 2967.28 is constitutional, subsequent criminal charges based on the conduct which formed the post-release control sanction civil violation do not violate double jeopardy. State v. Hite (Dec. 14, 2000), Cuyahoga App. No. 77374, unreported.
The Public Defender's first assignment of error is overruled.
The second assignment of error by the Public Defender provides:
 DWAYNE WILSON'S CONVICTION FOR INTIMIDATION VIOLATES HIS CONSTITUTIONAL RIGHT TO LIBERTY WITHOUT DUE PROCESS OF LAW AS GERALD COATS DID NOT HAVE ANY LEGAL DUTY TO SUPERVISE MR. WILSON, SO MR. WILSON COULD NOT HAVE ATTEMPTED TO HINDER MR. COATS IN THE EXERCISE OF A LEGAL DUTY.
This assignment is premised on the argument that the post-release control sanctions under R.C. 2967.28 are unconstitutional. See the Public Defender's first assignment of error, supra. Hence, appellant argues that if the imposition of post-release controls were unconstitutional and void ab initio, then Mr. Coats never could have been vested with a lawful duty to monitor Wilson for compliance with those controls since any duty was likewise void ab initio. Based on Woods v. Telb, supra, which upheld the constitutionality of post-release controls, this argument is without merit.
The Public Defender's second assignment of error is overruled.
The third assignment of error by the Public Defender provides:
 DWAYNE WILSON WAS DEPRIVED OF HIS RIGHT TO A SPEEDY TRIAL, WHEN HIS TRIAL DID NOT BEGIN WITHIN THE TIME FRAME ESTABLISHED BY OHIO'S SPEEDY TRIAL STATUTES.
As correctly noted by the parties, Wilson, who was held in jail from the time of his arrest to the commencement of the trial on the underlying pending offense, had to be brought to trial within ninety days of his arrest. See R.C. 2945.71 through .73. This ninety-day time period, as agreed to by the parties, commenced on September 10, 1999, the day following Wilson's arrest. Appellant argues that the speedy-trial period expired on December 8, 1999. See Public Defender brief, at 14.
From September 10 through September 30, 1999, an elapsed period of twenty-one (21) days, the record discloses, and appellee concedes, no activity which would toll the speedy trial provision.
On October 18, 1999, a pre-trial conference was conducted at the request of the trial court. The journal indicates that at this pre-trial Wilson requested that (1) another pre-trial conference be conducted, ten (10) days later, on October 28, 1999, and (2) trial commence on November 17, 1999.[2] This ten-day period, because it was made on the defendant's own motion, is charged to the defense for tolling purposes. See R.C. 2945.72(E), (H). Thus, the court, by virtue of the addition of ten days occasioned by the defense request for a pre-trial conference, had until December 18, 1999, within which to bring Wilson to trial.
On November 17, 1999, the trial court rescheduled the trial to December, 9, 1999. Since this rescheduling was done on the court's initiative, the time does not toll the speedy-trial provision.
On December 9, 1999, the trial court, at the request of Wilson, continued the trial to January 5, 2000. Thus, January 5, 2000, on defendant's own initiative, became the new deadline for commencing the trial.
On January 5, 2000, the court noted it was in trial on another criminal case, and advised counsel that Wilson's trial would commence as soon as the verdict was received in that other case. This reasonable continuance by the trial court for the purpose of conducting an ongoing trial in another case, is authorized pursuant to R.C. 2945.72(H), and tolls the speedy-trial period.
On January 10, 2000, the trial court continued Wilson's trial, at Wilson's request, to January 12, 2000. This request can be viewed as a waiver of the period between January 5 and January 10, 2000. Thus, by virtue of Wilson's own initiative, the speedy trial deadline was extended to January 12, 2000. See R.C. 2945.72(E),(H). Wilson's trial commenced, as most recently requested by Wilson, on January 12, 2000.
The Public Defender's third assignment of error is overruled.
The fourth assignment of error by the Public Defender provides:
 DWAYNE WILSON'S CONVICTION FOR INTIMIDATION VIOLATES HIS RIGHT NOT TO BE DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW, AS IT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE TO PROVE HIS GUILT BEYOND A REASONABLE DOUBT.
The standard of review for a sufficiency of the evidence argument was recently stated in State v. Treesh (2001), 90 Ohio St.3d 460, 484:
 The relevant question in determining the sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis deleted.) Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573; State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. We will not disturb the verdict unless we find that reasonable minds could not reach the conclusion reached by the trier of fact. Id. at 273, 574 N.E.2d at 503.
We are also mindful in our review of the sufficiency of the evidence that we do not weigh the evidence, and determining the credibility of the witnesses is left to the fact-finder. State v. DeHass (1967),10 Ohio St.2d 230, 231; State v. Jenks, supra, 61 Ohio St.3d at 279,574 N.E.2d at 507.
In this assignment, appellant argues that his conviction was not supported by the sufficiency of the evidence because the circumstantial evidence did not prove Wilson's knowledge and intent at the time of making the telephone calls. Appellant argues that:
 Dwayne Wilson testified that he was angry when he called Coats, but did not intend to intimidate him (T. 365-367). Coats himself testified he was not intimidated by the call. (T. 218 224). He also testified that Wilson's call did not frighten him and the only reason he filed any criminal charges was because he (sic) supervisor ordered him to file charges, as the department had been having problems with some of the parolees it supervised (T. 247-249). Gerald Coats himself testified that he did not feel frightened or intimidated by the call or that he felt it was anything over which he should file criminal charges.
Appellant's Public Defender brief, at 17-18.
The record indicates that appellant's depiction of Coats as not being intimidated at all is not entirely accurate. Coats testified on direct examination, as follows after describing the telephone calls:
 Now, at that time I wasn't scared because there was forty armed officers in there, but he put our whole office in alert because our windows are not bullet proof, and our secretaries don't have guns.
 So we had to put pictures up on the windows, make sure everybody is aware. If he walks in the building, he is to be apprehended. (Tr. 218.)
Coats, during cross-examination, continued testifying in pertinent part, as follows:
 Q. If I understand you correctly, Mr. Coats, you indicated that you really weren't in fear when he called in at all?
A. No, because like I explained to you, that
Q. Is that correct, yes or no?
A. Yes. (Tr. 224.)
* * *
 Q. You didn't feel threatened or in harm's way on the time you got the phone call, did you?
 A. No, because like I explained to you, that we're in the office with forty officers. At that time, no. (Tr. 249.)
* * *
Coats' testimony clearly indicates that he was not frightened in the setting of his office due to the presence of forty armed fellow officers. However, Coats' trepidation and concern over the telephonic threats by Wilson is manifested by his warning the office to take precautionary safeguards against Wilson, to apprehend Wilson on sight should Wilson appear at the office, and going over to Tower City almost immediately after the telephone calls were received in an attempt to find Wilson there.
Putting this evidence aside, we note that the offense of Intimidation is complete under the particular facts presented, where a person, * * * by unlawful threat of harm to any person or property, * * * shall attempt to influence, intimidate, or hinder a public servant in the discharge of the person's duty. R.C. 2921.03(A). It is the use of an unlawful threat of harm coupled with an attempt to influence or intimidate or hinder a person's duty which is the essence of the offense. The attempt does not have to succeed, nor does the offense mandate that the unlawful threat be taken as a credible threat by the victim. In the case sub judice, there was sufficient evidence presented that an unlawful threat of harm was made by Wilson to Coats (and the general office staff of Coats' office), and that, from the stated terms used in the threatening telephone calls, this threat was made in an attempt to influence and/or intimidate Coats to not properly monitor Wilson's parolee activities.
The Public Defender's fourth assignment of error is overruled.
The fifth assignment of error by the Public Defender provides:
 DWAYNE WILSON WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
The standard of review for a claim of ineffective assistance of counsel is provided in State v. Treesh, supra, 90 Ohio St.3d at 489, as follows:
 Reversal of a conviction on the grounds of ineffective assistance of counsel requires a showing, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive defendant of a fair trial. Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.
In addition to the preceding citation, we note that decisions by counsel which can be characterized as trial strategy or tactics should not be second-guessed by reviewing courts in a claim of ineffective assistance of counsel. State v. Treesh, supra, 90 Ohio St.3d at 489, citing State v. Williams (1991), 74 Ohio App.3d 686, 697.
In this assignment, appellant argues that his trial counsel sought to demonstrate that Wilson's threat to Coats was not credible and could not intimidate Coats, that Wilson was merely venting his anger and frustration during the telephone calls; anger and frustration which was the result of Wilson's confusion and consternation over the terms of his post-release controls. The record indicates that Wilson believed that post-release control sanctions were only a possibility for his prior sexual offenses, not mandatory, and that they would be for a term of three years, not five years as believed by the Parole Authority.
One of the pieces of evidence which defense counsel used in an attempt to demonstrate the cause of this confusion and frustration over the use and time frame of post-release controls was Defendant's Exhibit F. This exhibit, which was first used during the direct examination of Wilson during his case-in-chief (Tr. 376), is a transcript of the November 2, 1998 guilty plea hearing in State v. Dwayne Wilson, Cuyahoga County Common Pleas Court Case No. CR-363969, during which Wilson, who had been charged with one count of Rape in violation of R.C. 2907.02, pled guilty to Gross Sexual Imposition in violation of R.C. 2907.05(A)(1) with an agreed sentence of six-months imprisonment plus the imposition of post-release controls. In using Defendant's Exhibit F to demonstrate Wilson's alleged confusion over the applicability and expiration of post-release control sanctions, defense counsel called Wilson's attention solely to page 11, and the following testimony transpired:
 Q. Sir, I'm going to hand you what has been marked for purposes of identification as Defendant's Exhibit F. Do you see that?
A. Yes.
 Q. Is this a copy of your transcript of proceedings from November 2, 1998, before Judge Fuerst?
A. Yes.
 Q. And I call Your attention to page 11, where the Court is inquiring of you. It says: Do you also know that since you're going to be incarcerated, you may be subject to what they call post-release control for a period of three years. That is a parole-like period of incarceration. And you're answer was: Yes, ma'am?
A. Yes.
 Q. Okay. In both of those instances the Judge didn't say it was mandatory, just said it might occur, is that not correct?
A. Yes, sir.
 Q. And in both of those instances she told you it would be for a three-year period of time?
A. Yes. (Tr. 376-377.)
Appellant complains on appeal that through Defendant's Exhibit F the jury was exposed to, and read, a passage at page 6 of that hearing transcript, wherein the victim (Ms. Collins) of that sexual offense gave her statement to the court:
 MS. COLLINS: I just want to say something to Mr. Wilson.
THE COURT: All right.
 MS. COLLINS: Dwayne, you took a part of me when you took me to my house, raped me in front of my girls. (Italicization added.)
* * *
Appellant argues that the jury, making the unsupported conclusion that the jury read Ms. Collins' statement contained in that transcript that Wilson had raped me in front of my girls, could not impartially review the Intimidation offense before it. First, the record does not demonstrate that the jury, in fact, read Exhibit F, let alone the Collins' statement contained therein. The jury could have not read the transcript during its deliberations and relied on its recollection of Wilson's testimony concerning page 11. It is equally probable that the jury determined guilt based on the remaining evidence and did not believe Wilson's claim of confusion and a lack of intent to intimidate. Second, the use of Exhibit F falls within the ambit of trial tactics by defense counsel. As such, its use is not reversible under a claim of ineffective assistance of trial counsel. State v. Treesh, supra. Accordingly, the claim of ineffective assistance of trial counsel is without merit.
The Public Defender's fifth assignment of error is overruled.
We turn now to the appellant's July 3, 2000, pro se brief. Appellant presents three broadly-based assignments of error. See pro se brief, at 1. The first assignment of error provides four conclusory statements detailing alleged due process violations:
1. DUE PROCESS:
 a. The Trial Court was without proper jurisdiction to try Defendant.
 b. Defendant's right during preliminary hearings were not fully enforced.
c. Motions for dismissal were overlooked.
d. Defendant was denied the power of subpoena.
The second assignment of error provides four conclusory statements detailing alleged ineffective assistance of trial counsel:
2. INEFFECTIVE ASSISTANCE OF COUNSEL:
 a. Defendant was not afforded his right to present witnesses, or legal documents.
 b. Defendant was not afforded his right to exercise the power of subpoena.
 c. Defendant was not afforded the right to chose (sic) a sound defense plan.
 d. Defendant has the right to chose, (sic) what, his defense plan shall be.
The third assignment of error provides six conclusory statements detailing alleged double jeopardy:
3. DOUBLE JEOPARDY:
 a. Multiple Punishments; Defendant had previously been incarcerated, twice, for offenses arising out of same (sic) incident. Bars further prosecution.
 b. Multiple Counts/Allied Offenses; Defendant's alleged conduct consisted of two allied offenses; Harassment Intimidation, or Harassment 
Threatening. Defendant can only be prosecuted for one.
 c. Dual Sovereign Doctrine; Cuyahoga County Prosecutor's office was barred from attempting/prosecuting defendant.
 d. Same Offense, Lesser Included Offenses; Defendant plead to Telephone "Harassment," a lesser offense of Intimidation. Was found guilty of "Threatening" a greater offense of Intimidation. Bars defendant from further prosecution.
 e. Administrative estoppal (sic); Defendant had previously been found guilty by Ohio Adult Parole Authority. Bars defendant from further prosecution.
 f. Collateral Consequence; Defendant was placed on Post Release Control illegally.
In arguing these assignments of error at pages 10-11 of his brief, appellant provides six paragraphs of argument without any separately stated indication as to which assignment is being argued or reference to any legal authority or citation, or reference to the record. App.R. 16(A)(7) mandates that an appellant's brief contain an argument section which conforms to the following stricture:
 (7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. * * *.
Reference in briefs to the record must conform to App.R. 16(D), which states:
 References in the briefs to the record shall be to the pages of the parts of the record involved; e.g., Answer p. 7, Motion for Judgment p. 2, Transcript p. 231. Intelligible abbreviations may be used. If reference is made to evidence, the admissibility of which is in controversy, reference shall be made to the pages of the transcript at which the evidence was identified, offered, and received or rejected.
Since the appellant's pro se assignments are not separately stated and argued pursuant to App.R. 16(A), the assignments need not be considered and are overruled pursuant to App.R. 12(A)(2).[3]
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and JAMES J. SWEENEY, J., CONCUR.
 __________________________ JAMES D. SWEENEY, JUDGE
[1] R.C. 2921.03(A) provides:
 (A) No person, knowingly and by force, by unlawful threat of harm to any person or property, or by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a public servant, party official, or witness in the discharge of the person's duty.
[2] Appellant conveniently neglects to mention that this October 28, 1999, pre-trial was scheduled at the request of Wilson.
[3] App.R. 12(A)(2) provides:
 (2) The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).