OPINION
Appellant, Jason Demetris, appeals from the judgment of the Trumbull County Court of Common Pleas. A jury found Demetris guilty of two counts of rape in violation of R.C. 2907.02. Demetris was sentenced to two life terms in prison, to be served concurrently, with ten years of actual incarceration to be served before being eligible for parole. The court found Demetris to be a sexually oriented offender.
Demetris was dating Natale Ward on and off from 1994 to 1999. They cohabited for a period of time in Virginia Beach. They both moved back to Trumbull County at different times in 1999. They were married in December of 1999. After they were married, Natale and her five-year-old daughter, the victim, moved in with Demetris. The three of them lived in a trailer in Trumbull County with one of Demetris' friends. Demetris and Natale shared a room in the trailer, and the victim slept on the floor of that room.
In the spring of 2000, Demetris and Natale were hiking at Nelson Ledges Park. Natale attempted to jump from one rock to another, slipped, and fell about seventy feet. Natale suffered numerous injuries and had to be airlifted to Cleveland Metro Hospital. The victim lived with Demetris after her mother's accident.
Twelve days after Natele's fall, the victim's maternal aunt, Debbie Bailey ("Bailey"), filed an ex-parte motion for temporary custody of the victim. This motion was granted. While the victim was living with Bailey, she told her thirteen-year-old cousin, Leeanna, a "secret" concerning improper acts between her and Demetris. Leeanna relayed this information to her mother, Bailey. Bailey contacted the authorities.
As a result of these allegations, Demetris was charged with two counts of rape.
Demetris raises three assignments of error on appeal. These assignments of error will be considered out of order. Demetris' second assignment of error is:
 "The appellant received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution."
Demetris presents three issues for review relating to his claim of ineffective assistance of trial counsel. Demetris claims he was denied the effective assistance of trial counsel due to trial counsel's failure to object to numerous hearsay statements. Next, Demetris asserts that his trial counsel was ineffective for failing to object to the state's expert not testifying that his opinion was formulated with reasonable scientific certainty. Demetris also argues that his trial counsel was ineffective for fail failing to obtain an expert witness.
In State v. Bradley, the Supreme Court of Ohio adopted the following test to determine if counsel's performance is ineffective: "[c]ounsel's performance will not deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation, and, in addition, prejudice arises from counsel's performance."[1]
Many witnesses were permitted to testify, either directly or through the admission of exhibits, as to the events of the crime charged as relayed to them by the victim. The majority of these statements were inadmissible hearsay statements and warranted an objection from Demetris' trial counsel.
Leeanna, the victim's thirteen-year-old cousin and daughter of Bailey, testified for the state. She was permitted to testify to two out-of-court statements she made to her mother. Demetris' trial counsel did not object to either of these statements. The following colloquy occurred between the prosecutor and Leeanna on direct examination:
"Q. And what did you tell your mom?
 "A. [Demetris] rubbed his private area on [the victim].
"Q. Okay. Did you tell her anything?
"A. He made her pee it out."
These are out-of-court statements. They were being offered to prove the truth of the matter asserted. Thus, they are hearsay.[2] There are actually two layers of hearsay here. The first layer is what the victim told Leeanna. The second layer is what Leeanna told her mother. The fact that Leeanna is testifying as to what she, herself, stated out of court is in the character of inadmissible evidence.
Bailey testified as to the conversation she had with Maureen Fishbach from the Trumbull County Children's Services Board. She testified that "I told her that [Demetris] was rubbing his private parts on [the victim] and that she had to pee out what came out of daddy." Demetris' trial counsel did not object to this statement. This testimony is even more problematic, in that there are now three layers of hearsay. Ms. Bailey testified that she never asked the victim what happened. Therefore, it can be assumed that she gained this information from what Leeanna told her. So now we have a hearsay statement from the victim to Leeanna, a second hearsay statement from Leeanna to Bailey, and a third hearsay statement from Bailey to Maureen Fishbach.
Darlene Shope is a social worker at the Trumbull County Children's Services Board. She testified concerning an interview she had with the victim. These statements were made out of court. They are being offered to prove the truth of the matter asserted. Therefore, they are hearsay.[3]
We note that statements made to a social worker may be admissible if they are made pursuant to Evid.R. 803(4), for the purposes of medical diagnosis or treatment.[4] The purpose of this exception is the belief that a person will tell a medical professional the truth in order to receive the best care during treatment.[5] There was no evidence presented that the interview between the victim and Darlene Shope was for the purposes of medical diagnosis or treatment. Ms. Shope testified that as the interview concluded, she explained to the victim what to expect during a subsequent medical examination. This testimony indicates that the victim did not give the statements to Ms. Shope for the purposes of medical diagnosis or treatment, as the victim was not informed about the upcoming medical examination until the end of the interview.
The hearsay statements were not admissible under the Evid.R. 803(4). However, we note that "[a] trial court has broad discretion in determining whether a child's out-of-court declaration is admissible as a hearsay exception."[6] However, in a serious case such as this, trial counsel should have at least objected to the statements. This would have required the trial court to make a ruling on them.
Darlene Shope testified that the victim disclosed to her what had occurred between the victim and Demetris, and that her story was consistent with what the referral information was. This is a hearsay statement.
The following statements were classified as "determinations" that Ms. Shope made from the interview. It is obvious she obtained the information to make these statements from the victim. Classifying these statements as determinations does not remove them from the hearsay classification. Ms. Shope "determined" that the type of activity that occurred was sexual intercourse. She also "determined" that "there was a yellowish, wet fluid that came out" of Demetris' penis. These are hearsay statements.
The following is a portion of the transcript when Dr. Dodgson was testifying on direct examination regarding the interview between the victim and Ms. Shope that he watched, via closed circuit television, from another room:
 "THE COURT: Well, if an actual hearsay statement is made and you believe it is hearsay, object to it and then I will rule on it.
"* * *
 "Q. In the interview which you were observing a hearing, did [the victim] identify the abuser?
"A. She did.
"Q. Okay, did she indicate who that was?
"* * *
"A. Yes.
"Q. Who was that?
"ATTY. BLUEDORN: Objection, hearsay.
"* * *
 "THE COURT: We're on record outside the presence of the jury on an issue on objection with respect to this witness testifying as to the identity of what the victim in this case indicated who the perpetrator was, and there was an objection based on hearsay. And I think all of the parties agree that, generally speaking, information given directly to a doctor by the patient regarding history of what occurred in order for the doctor to confirm, diagnosis and treat, it is admissible. And the basis of the objection is the wording of the question as to what she said the victim was, and I indicated if that is going to be the sole issue, that there is another way to ask that question because it was asked with some of the other witnesses, to avoid it and then you would be permitted to ask specific questions regarding what the patient/victim said regarding what happened to her and how it happened. Okay.
 "ATTY. BLUEDORN: For the record, that is my understanding of it, Your Honor.
"* * *
 "Q. Doctor, during the interview, did [the victim] identity the abuser.
"A. Yes.
"Q. Did she indicate what type of abuse had occurred.
"A. Yes.
 "Q. And did she indicate when it happened — I don't mean time-wise but was anyone else —
"A. She didn't give a date.
"Q. Was anyone else present when it happened?
"A. No.
"Q. Did she indicate how it felt?
"A. Yes.
"Q. How did it feel?
"A. She said it hurt.
"Q. Why?
"A. Because he put it in me.
 "Q. Were you able to determine how many times it occurred?
"A. She said twice.
"Q. And where it occurred?
 "A. I think she said like — well, in her room and in mother and daddy's room.
 "Q. Did she indicate whether she had to do anything after the sexual activity?
"A. Yes, she said she had to get up and wash it off?
"Q. Okay, why?
"A. So she wouldn't get pregnant and die.
 "Q. Okay, did she describe the kind of stuff she had to wash off?
"A. She said it was yellow and wet.
 "Q. Now, after taking all of that history you begin — and history and interview, you begin your examination?
"A. Yes."
Many of these statements are hearsay. They are relaying what the victim said to Ms. Shope outside of the courtroom. The fact that the doctor was listening to them does not make them admissible under Evid.R. 803(4), because there is no evidence that the victim was making them for the purposes of medical diagnosis or treatment. There was no evidence that the victim even knew that a doctor was watching the interview.
Again, the admissibility of these statements is within the broad discretion of the trial court. However, considering the severity of this case and the graphic detail of the testimony, Demetris' trial counsel should have objected to the testimony and forced the court to rule on the admissibility of these statements.
An argument could be made that some of the hearsay statements were admissible pursuant to Evid.R. 807. Evid.R. 807, provides a hearsay exception for certain statements made by children under twelve years old in an abuse case.[7] However, one of the requirements of this rule is that the child's testimony not be reasonably ascertainable.[8] The record does not indicated that any of the requisite factors of Evid.R. 807(B)(1), (2), or (3) were present to establish that the victim's testimony was not ascertainable.
The performance of Demetris' trial counsel fell below an objective standard of reasonable representation. Trial counsel remained quiet as witness after witness testified that "she said this" and "I told her this" Trial counsel was representing a man accused of raping a child, one of the most disturbing crimes there is, and defense counsel allowed numerous hearsay statements to be echoed before the jury, many of them describing the alleged acts in much more detail than those provided by the victim on the stand. Such a performance is unacceptable.
However, despite this inadequate performance, we fail to see that Demetris was prejudiced by it. One of the reasons is that, after failing to earlier object to the statements of Leanna, Bailey, and Ms. Shope, Demetris' trial counsel chose to admit defense exhibit B. This document was entitled "Social Work Intake Summary" and contained the language "Mrs. Bailey reported that on 4/1/00 [the victim] disclosed to her twelve-year-old daughter, [Leeanna], that [Demetris] had rubbed his `private' on her." This exhibit essentially contained the same language as the statements Leeanna, Bailey, and Ms. Shope testified to in court.
While some of the other statements may have been damaging, we do not see that Demetris was denied a fair trial because of them. The victim testified that "[Demetris] put his [private area] in mine [private area]." Further, there was physical evidence presented to support her allegations, in that Dr. Dodgson testified that there was a "notch" on the inside of the victim's vagina.
While we do not find that Demetris was prejudiced by the majority of the statements, we do find that Demetris was prejudiced by the statement relayed to the court by Dr. Dodgson, that the victim said it happened twice. Demetris was charged with two counts of rape. This was the only evidence presented that the alleged acts occurred more than once. This statement will be addressed in more detail in our analysis of Demetris' first assignment of error, infra.
Demetris asserts that his trial counsel was ineffective for failing to object to Dr. Dodgson's testimony, in that his opinion was not to a "reasonable degree of medical certainty." This court has recently held that "there is no requirement that an expert utter any `magic language,' i.e., that his opinion was within the reasonable degree of certainty or reasonable degree of certainty within the particular knowledge of his professional experience."[9]
Since Dr. Dodgson was not required to utter any magic language, Demetris' trial counsel's performance did not fall below an objective standard of reasonable representation for failing to object to the testimony.
Demetris next argues that his trial counsel was ineffective for failing to obtain the services of an expert. We do not agree. Demetris asserts that counsel applied for and was granted funds for an expert, however, counsel never spent this money.
The decision to call witnesses is one of trial strategy, and will not be grounds for a claim of ineffective assistance of counsel unless prejudice is shown.[10] We do not see that Demetris was prejudiced by this action. The state's expert testified that there was a notch in the victim's vagina. He admitted that there was no certain way to tell when the injury that caused the notch occurred.
Demetris' second assignment of error is without merit.
Demetris' first assignment of error is:
 "The trial court erred in denying appellant's motion for acquittal, pursuant to Crim.R. 29."
A court shall grant a motion for acquittal if the evidence presented is insufficient to sustain a conviction.[11] To determine if there is sufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[12]
Demetris was charged with two counts of rape in violation of R.C.2907.02, which states, in relevant part:
 "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 "(a) For the purpose of preventing resistance, the offender substantially impairs the other person's judgment or control by administering any drug, intoxicant, or controlled substance to the other person surreptitiously or by force, threat of force, or deception.
 "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
 "(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.
 "(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
It is undisputed that the victim was not the spouse of Demetris and was under thirteen years of age at the time of the act. There was also evidence presented, from the testimony of the victim and Dr. Dodgson, that, when viewed in a light most favorable to the prosecution, was sufficient to establish that sexual conduct occurred.
Demetris argues that his motion for acquittal should have been granted on both counts of rape, because the state failed to show that force was used. Both parties cite State v. Eskridge, wherein the Supreme Court of Ohio held:
 "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength."[13]
The victim in this case was the five-year-old stepdaughter of Demetris. Some degree of force can be implied, as the victim testified that it hurt when Demetris put his private parts in her. It is unlikely she would do something that hurt her without some degree of force. She also testified that she referred to Demetris as "Daddy." Demetris was obviously older, larger, and stronger than the victim. Due to the presence of a family relationship, and the disparity in age, size, and strength of the parties, and the testimony of the victim that the act hurt, there was sufficient evidence presented to establish the element of force.
Demetris also argues that there is insufficient evidence for a conviction on the second count of rape. We agree. The only evidence presented that this event happened more than once was the potentially inadmissible hearsay statement of Dr. Dodgson that "[the victim] said twice." The victim did not indicate that the alleged acts occurred more than once. The physical examination did not reveal a specific number of times that the victim may have been penetrated. The state failed to carry its burden to show that the alleged acts occurred more than once to support a conviction on a second count of rape.
Demetris' first assignment has merit with respect to the second count of rape.
Demetris' final assignment of error is:
 "The appellant's two counts of rape of a minor, with force, are against the manifest weight of the evidence."
With respect to the second conviction of rape, this assignment of error is moot based on our finding in the previous assignment of error. We will address this assignment of error only as it relates to the first count of rape.
In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."[14]
Demetris testified on his own behalf. Some of the witnesses testified regarding other allegations of sexual abuse of the victim, first by neighborhood girls when the victim lived with her mother in Niles, and later by a man in Virginia Beach. Part of Demetris' defense was that either of these incidents could have caused the physical injury to the victim. However, there was no competent evidence presented that either of these suspected incidents actually occurred.
The victim testified that "[Demetris] put his [private area] in mine [private area]." Demetris testified that he did not do it. The jury heard evidence from witnesses on both sides. After hearing all of this evidence, the jury decided to believe the testimony of the state's witnesses over that of Demetris. By so doing, we do not see that the jury lost its way or created a manifest miscarriage of justice.
Demetris' final assignment of error is without merit.
The judgment of the trial court regarding conviction on the first count of rape is affirmed. The judgment of the trial court regarding the conviction on the second count of rape is reversed. This case is remanded to the trial court for resentencing on the second count.
DONALD R. FORD, J., concurs, DIANE V. GRENDELL, J., concurs in judgment only.
[1] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. (Adopting the test set forth in Strickland v. Washington
(1984), 466 U.S. 668.)
[2] Evid.R. 801(C).
[3] Evid.R. 801(C).
[4] In re Dustin (Sept. 3, 1999), 11th Dist. No. 98-L-034, 1999 Ohio App. LEXIS 4134, at *16.
[5] Id. at *17.
[6] Id. at *16, citing State v. Dever (1992), 64 Ohio St.3d 401, 410,1992-Ohio-41.
[7] Evid.R. 807(A).
[8] Evid.R. 807(A)(2).
[9] Coe v. Young (2001), 145 Ohio App.3d 499, 504.
[10] State v. Williams (1991), 74 Ohio App.3d 686, 695.
[11] Crim.R. 29(A).
[12] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307.
[13] State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph one of the syllabus.
[14] (Citations omitted.) State v. Thompkins (1997), 78 Ohio St.3d 380,387, 1997-Ohio-52.