OPINION
{¶ 1} The defendant-appellant, Roger P. Irelan, Jr. ("Irelan"), appeals the judgment of the Henry County Common Pleas Court convicting him of gross sexual imposition as the result of a jury trial.
 {¶ 2} On April 4, 2005, the Henry County Grand Jury indicted Irelan on one count of gross sexual imposition, a violation of R.C. 2907.05(A)(4), a third degree felony. The indictment was based on the allegations of a child who was approximately eight years old at the time of disclosure[1] concerning an event that occurred when she was four years old.[2] At the time of the incident, Irelan was visiting his sister, Tina Sidel ("Tina"), her husband, Jason Sidel ("Jason"), and their two children, J.S. and Z.S. While Tina and Jason ran an errand, Irelan watched J.S., who was four years old, and Z.S., who was approximately two years old. According to J.S., while the parents were away, J.S. and Irelan became naked, and Irelan put J.S. into Z.S.'s crib. Irelan climbed on top the crib rails, and while balancing on his hands and knees on the rails, he reached into the crib and touched J.S. in the vaginal area. Apparently, Irelan then got off of the crib, and he and J.S. got dressed before Tina and Jason came home. In the spring of 2004, J.S. saw a program at school about sexual abuse. While riding to school with Tina one morning in May 2004, J.S. revealed that Irelan had sexually abused her. J.S. subsequently spoke with the school counselor and a caseworker about the abuse.
 {¶ 3} Irelan pled not guilty to the charge, and a jury trial was held on October 17-18, 2005. At trial, the State of Ohio ("State") presented testimony from J.S.; Tina; Pam Righi, the school counselor; and David Mack, an investigating detective. The State moved two drawings into evidence.[3] Irelan presented testimony from Roger P. Irelan, Sr.; Tracy Shingledecker ("Shingledecker"), a social worker employed by Fulton County Jobs and Family Services; and Jason Ball, Irelan's friend. Irelan also moved a drawing into evidence.[4] The jury returned a guilty verdict, and on October 19, 2005, the trial court filed its judgment entry of guilt. On November 23, 2005, the trial court held a joint sex offender classification hearing and sentencing hearing. The court classified Irelan as a sexual predator and sentenced him to serve four years in prison. The trial court filed its sentencing judgment entry on November 30, 2005. Irelan appeals the judgment of conviction and asserts the following assignments of error:
The Defendant was convicted against the manifest weight of theevidence that [sic] the testimony of the child and social workerswas so contradicted by earlier statements, that they should nothave been deemed credible. (Yes)
 Counsel for the Defendant was ineffective under the provisionsof Amendment 6 and 14 of the U.S. Constitution, and Article OneSection 10 of the Ohio Constitution in failing to impeach theState's witnesses for the distortion of the investigative historyof the Case. (Yes)
 {¶ 4} In the first assignment of error, Irelan contends the conviction was against the manifest weight of the evidence. At trial, J.S. testified that Irelan touched her. However, Irelan contends that J.S.'s version of the incident has changed over time. Irelan claims J.S. has made other statements, such as:
1) my uncle had sex with me; 2) "I think my Uncle touched me",3) at various times her brother is in the room or not when theassault occurred; 4) her statements varied as to whether theUncle who weights approximately 250 lbs. is straddled upon therails of a crib, suspended above her, attempting some form ofsexual gratification while so balanced by reaching down into thecrib and touching her one time in the vaginal area.
Irelan contends the circumstances surrounding the allegation are flawed in that Tina was openly hostile to Irelan, and J.S. was aware of Tina's sentiment; J.S. told Shingledecker that Irelan "steals and lies"; the act J.S. described is physically impossible because crib rails would not hold a 250-pound man; and the incident as described by J.S. makes no sense when Irelan could have easily placed her on the bed next to the crib to assault her. In response, the State contends that the essential elements of gross sexual imposition were proved at trial, and any objection lodged by the appellant is based on witness credibility. The State argues that the fact-finder is in the best position to weigh credibility, and therefore, we must affirm the trial court's judgment.
 {¶ 5} Weight of the evidence concerns "the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. In determining whether the trial court's finding is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new hearing ordered. See State v. Adkins, 3rd Dist. No. 5-97-31, 1999-Ohio-881 (citation omitted). However, determinations concerning the weight of the evidence and credibility of the witnesses are better left to the trier of fact because it is able to observe the witnesses' demeanors and hear the testimony. State v. DeHass (1967), 10 Ohio St. 2d 230,227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 6} R.C. 2907.05(A)(4) states, "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when any of the following applies: * * * The other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." The term "sexual contact" is defined as the "touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C.2907.01(B).
 {¶ 7} At trial, J.S. testified that while she was in the living room, Irelan told her to take off her clothes. Trial Tr., Jan 23, 2006, at 112. J.S. went into the bathroom and removed her clothing because she thought it was time for her bath. Id. J.S. testified that Irelan took her from the bathroom, put her in Z.S.'s crib, took off his clothes, got on the crib, and touched her. Id. at 112:17-25. The following dialogue occurred on direct examination:
Q. And then he touched you. What did he touch you with?
A. His hand.
Q. Okay. And do you recall where he touched you?
A. Yes.
Q. Okay. And where did he touch you?
A. Between my legs.
Q. In your private parts there?
A. Uh-huh.
Q. And the picture you drew that we just talked about, that shows where he touched you? [reference to State's Exhibit 1].
A. Uh-huh.
Id. at 115:1-11. On cross-examination, J.S. testified that she keeps hearing the story and it keeps coming back to her. Id. at 120. She stated that her parents and Jeff Bischoff, a counselor, help her "remember". Id. When asked if she remembered telling Shingledecker she thought Irelan abused her, J.S. nodded her head "yes". As a follow-up question, Irelan asked, "Do you remember saying that you weren't sure?"[5] Id. at 123:3. J.S. responded, "Yes. But now since I have been thinking about it a lot, the stories come back to me, and I remember it a lot better." Id. at 123:4-5. J.S. then admitted she had difficulty remembering the incident when she spoke with Shingledecker. Id. at 123.
 {¶ 8} Also, when Pam Righi testified, there was some discrepancy between what J.S. had told her when she reported the incident and her trial testimony. When Shingledecker testified, her testimony apparently contradicted her notes, which were not in evidence. J.S.'s testimony establishes the essential elements of gross sexual imposition. At trial and on appeal, Irelan has relied on the inconsistent testimony and the four year delay in reporting the abuse to impeach J.S. as a witness. Irelan's witnesses essentially testified in order to destroy J.S. and Tina's credibility. The jury heard J.S.'s testimony, and the jury heard all of the evidence to impeach the witnesses. The jury evaluated the credibility of each witness and weighed their testimony. Apparently, the jury chose to believe the victim's testimony that Irelan balanced on the rails of Z.S.'s crib and touched J.S. in the vaginal area. Because the jury was able to hear the testimony and observe the witnesses and their demeanor, we cannot conclude that the jury clearly lost its way. The first assignment of error is overruled.
 {¶ 9} In the second assignment of error, Irelan contends he was denied the effective assistance of counsel at trial. First, Irelan contends counsel called Shingledecker to testify on his behalf because her notes indicated she was unsure whether the incident was sufficient to justify criminal charges. Irelan contends:
[i]t was central to his theory of the defense, that the childdid not state at the time of the initial interviews that she wassure she was touched. As is evident from the transcript,[counsel] called Mrs. Shingledecker expecting she would establishthese points. She did not. * * * The net effect was that hecalled a witness for the defense which destroyed his wholetheory.
Second, Irelan contends counsel failed to call Mrs. Hershberger to rebut Shingledecker's testimony. In response, the State contends Irelan's counsel was effective. The State argues, "[t]he fact that the witness did not say what the Defendant wanted her to is not the fault of his Counsel." The State contends defense counsel had a valid trial strategy that simply back-fired.
 {¶ 10} In order to establish ineffective assistance of counsel, an appellant must meet two requirements. First, the appellant "`"must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed by theSixth Amendment."'" State v. Anderson, 9th Dist. No. 21431, 2003-Ohio-3315, at ¶ 14 (quoting State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 48 (quoting Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052,80 L.Ed.2d 674)). Second, the offender must "`"show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."'" Id. However, we are mindful of the strong presumption in favor of counsel's adequacy and that counsel's actions may be sound strategy. Id. at ¶ 15 (citing Colon, supra at ¶ 49 (internal citation omitted). Additionally, we must evaluate the reasonableness of counsel's actions based on the facts of the case and "`"viewed as of the time of counsel's conduct."'" Id. at ¶ 16 (quoting Colon, supra at ¶ 49 (quoting Strickland, supra at 690)). "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if a better strategy had been available." State v. Utz, 3rd Dist. No. 3-03-38, 2004-Ohio-2357, at ¶ 12 (citing State v. Phillips,74 Ohio St.3d 72, 85, 1995-Ohio-171, 656 N.E.2d 643). The decision to call witnesses is a matter of strategy, and "absent a showing of prejudice, does not deprive a defendant of effective assistance of counsel." Id. (citing State v. Williams (1991),74 Ohio App.3d 686, 694, 600 N.E.2d 298).
 {¶ 11} In this case, we cannot find trial counsel's performance fell below the objective standard of reasonableness. The record does not indicate that trial counsel was unprepared. Counsel cross-examined the State's witnesses, clearly with the goal of impeaching them. Counsel called witnesses on Irelan's behalf, also in an attempt to impeach the State's witnesses. Attorneys are commonly confronted with surprise or unexpected testimony from witnesses. Here, counsel apparently chose not to draw any additional attention to Shingledecker's adverse testimony. Furthermore, counsel chose not to call Mrs. Hershberger to testify. There is nothing in the record to indicate what Mrs. Hershberger's testimony would have been had she testified. Therefore, Irelan cannot show he was prejudiced by trial counsel's strategy.
 {¶ 12} Additionally, Irelan has not shown that the results of the trial were unreliable. Even if Shingledecker had testified as expected, and even if trial counsel had called Mrs. Hershberger to testify, the jury would have been confronted with questions of credibility, and we cannot say the trial would have ended in a different result. The second assignment of error is overruled.
 {¶ 13} The judgment of the Henry County Common Pleas Court is affirmed.
Judgment affirmed.
 Rogers and Cupp, JJ., concur.
[1] J.S. disclosed sexual abuse to her mother in May 2004.
[2] The sexual abuse occurred in February 2000.
[3] Both drawings were made by J.S. The first depicts her lying in the crib with Irelan balanced on the rails. The second depicts a girl (who J.S. identified as herself) with an "X" over her vaginal area to show where she was touched.
[4] This drawing was also made by J.S. It depicts a penis with hair over the leg area and over the shaft of the penis.
[5] In reference to what J.S. told Tracy Shingledecker.